GENEVIEVE U. GILMORE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 34291. Promulgated June 4, 1953.

*E. H. McDermott, Esq.*, for the petitioner.
*Peter K. Nevitt, Esq.*, for the respondent.

### OPINION.

WITHEY, *Judge:* This is a proceeding for redetermination of a deficiency in gift tax of the petitioner for the calendar year 1947 in the amount of $6,615. The questions for determination are: (a) Were gifts which petitioner made to seven trusts gifts of present or future interests within the meaning of section 1003 (b) (3), Internal Revenue Code, and (b) may exclusions of $39,925 in prior years, now barred by the statute of limitations, if erroneously allowed be disregarded for the purpose of determining petitioner's total net gifts and applicable tax rate for 1947, the year at issue? All facts have been stipulated by the parties.

Petitioner, Genevieve U. Gilmore, is an indivdual residing at 1219 Short Road, Kalamazoo, Michigan. She filed a timely gift tax return for the year 1947 with the collector of internal revenue for the district of Michigan and paid gift taxes totaling $5,701.50 on the gifts reported on said return.

On December 8, 1947, the names, dates of birth and ages of petitioner's living grandchildren were:

580

| Grandchild | Birth date | Age at Dec. 8, 1947 |
|---|---|---|
| Sherwood M. Boudeman | Aug. 30, 1940 | 7 years |
| Martha Boudeman | Mar. 17, 1942 | 5 years |
| Steven H. Maloney | Aug. 20, 1942 | 5 years |
| Daniel Maloney | Nov. 22, 1944 | 3 years |
| Mary Jane Boudeman | Apr. 27, 1945 | 2 years |
| William U. Parfet | Nov. 1, 1946 | 1 year |
| Carol Boudeman | Oct. 7, 1947 | 2 months |

Petitioner created trusts for the benefit of each of said grandchildren on or about the following dates:

| Grandchild | Date of trust |
|---|---|
| Sherwood M. Boudeman | Dec. 30, 1944 |
| Martha Boudeman | Dec. 30, 1944 |
| Steven H. Maloney | Dec. 30, 1944 |
| Daniel Maloney | Dec. 30, 1944 |
| Mary Jane Boudeman | July 24, 1945 |
| William U. Parfet | Dec. 2, 1946 |
| Carol Boudeman | Dec. 8, 1947 |

The trust instruments in each instance are identical except for dates and the name of the beneficiary of each trust, and they differ in that the parents of the respective beneficiaries are designated as the trustees, together with the First National Bank & Trust Company of Kalamazoo, Michigan. The original corpus of the trust in each instance was the capital stock of the Upjohn Company, a Michigan corporation. The trust instrument in each instance provided for distribution of the trust estate and the net income therefrom as follows:

2.01 The TRUSTEES shall pay the principal and all income from the trust estate to SHERWOOD M. BOUDEMAN upon demand by the said SHERWOOD M. BOUDEMAN, and in case of his death this trust shall terminate and all of the remaining principal and accumulated income therefrom shall be paid to the estate of the said SHERWOOD M. BOUDEMAN.

After granting to the trustees broad general powers to invest, reinvest, and manage the trust estate and the income therefrom, together with the power to deal with other trust estates, special provision was made therein authorizing the trustees to invest the entire trust estate in the shares of stock, notes, securities, or other evidence of indebtedness of the Upjohn Company, Gilmore Brothers, Inc., also a Michigan corporation, or any merger of the two corporations. With respect to the payment of income or distribution of principal to the beneficiary, the trust agreement provided as follows:

3.07 *Payments and Distribution.* All payments of income or distribution of principal to the beneficiary of the TRUST ESTATE shall be made to such beneficiary in person or upon his personal receipts, except as hereinafter expressly provided, and shall not be grantable, transferable or otherwise assignable in

anticipation of payment thereof, in whole or in part, by the voluntary or involuntary acts of any such beneficiary, or by operation of law, and shall not be liable or taken for any obligation of such beneficiary. Payments or distributions to an incompetent beneficiary may be made by the TRUSTEES for the benefit of such beneficiary in such of the following ways as in their opinion shall be most desirable: (a) directly to such beneficiary; (b) to the duly qualified legal representative or representatives of such beneficiary; (c) to some near relative or friend of such beneficiary; or (d) by the TRUSTEES using such payment directly for the benefit of such beneficiary. Distributions of the TRUST ESTATE, or any share thereof, may be made in investments at the fair market value thereof and cash, or either, and in such proportions thereof as the TRUSTEES shall deem to be most equitable.

The agreement also provides a definition of "incompetent persons" as used in its payment and distribution paragraph, above set forth, as follows:

3.08 *Incompetent Persons.* A person shall be deemed "incompetent" for the purposes of this agreement if he or she shall be under legal disability declared or adjudicated by a court of competent jurisdiction, or if he or she shall be incapacitated to such extent as, in the TRUSTEES' opinion, shall make it impossible or impracticable for such person to give prompt and intelligent consideration to business matters. The TRUSTEES may require, accept and act upon such evidence of the competence or incompetence of any person as the TRUSTEES shall deem appropriate and reliable without liability by reason thereof.

With respect to the exercise of their discretion and the finality thereof, so far as beneficiaries are concerned, the trust instrument provides as follows:

3.10 *Miscellaneous.* No person dealing with the TRUSTEES shall be obliged to see to the application of any money paid or property delivered to the TRUSTEES, or as to whether or not the TRUSTEES have acted pursuant to any direction or approval required by this agreement. In each case where discretionary power is vested in the TRUSTEES hereunder, their express or implied decision or action in the exercise thereof shall be final and conclusive and be binding upon all beneficiaries hereunder and upon all persons whomsoever.

Prior to 1944 petitioner had made net gifts for gift tax purposes in the amount of $751,134.34 and had paid gift taxes of $35,454.52 on those gifts.

Petitioner made the following gifts of Upjohn Company capital stock during the year 1947, when the stock was valued at $120 a share, to the trusts involved here:

| Trust | Shares | 1947 Value |
|---|---|---|
| Sherwood M. Boudeman | 25 | $3,000 |
| Martha Boudeman | 25 | 3,000 |
| Steven H. Maloney | 25 | 3,000 |
| Daniel Maloney | 25 | 3,000 |
| Mary Jane Boudeman | 25 | 3,000 |
| William U. Parfet | 25 | 3,000 |
| Carol Boudeman | 130 | 15,600 |

Petitioner treated the above gifts as subject to the $3,000 annual statutory exclusion provided for in section 1003 (b) (3) of the Internal Revenue Code.

Petitioner made the following gifts of Upjohn Company capital stock during the years 1944, 1945, and 1946, when the stock was valued at $55 a share, $82 a share, and $105 a share, respectively, to the trusts involved here:

| Donee trust | 1944 | | 1945 | | 1946 | |
|---|---|---|---|---|---|---|
| | Shares | Value | Shares | Value | Shares | Value |
| Sherwood M. Boudeman | 40 | $2,200 | 40 | $3,280 | 25 | $2,625 |
| Martha Boudeman | 40 | 2,200 | 40 | 3,280 | 25 | 2,625 |
| Steven H. Maloney | 40 | 2,200 | 40 | 3,280 | 25 | 2,625 |
| Daniel Maloney | 40 | 2,200 | 40 | 3,280 | 25 | 2,625 |
| Mary Jane Boudeman | | | 80 | 6,560 | 25 | 2,625 |
| William U. Parfet | | | | | 105 | 11,025 |
| Total | | $8,800 | | $19,680 | | $24,150 |

Petitioner treated the following amounts of the above gifts as subject to the $3,000 annual statutory exclusion provided for in section 1003 (b) (3) of the Internal Revenue Code:

| Donee trust | 1944 | 1945 | 1946 | Total |
|---|---|---|---|---|
| Sherwood M. Boudeman | $2,200 | $3,000 | $2,625 | $7,825 |
| Martha Boudeman | 2,200 | 3,000 | 2,625 | 7,825 |
| Steven H. Maloney | 2,200 | 3,000 | 2,625 | 7,825 |
| Daniel Maloney | 2,200 | 3,000 | 2,625 | 7,825 |
| Mary Jane Boudeman | | 3,000 | 2,625 | 5,625 |
| William U. Parfet | | | 3,000 | 3,000 |
| Total | $8,800 | $15,000 | $16,125 | $39,925 |

The trust agreements were executed in Michigan, and the settlor, the beneficiaries, and trustees reside in Michigan.

All of the grandchildren, beneficiaries of the aforesaid trusts, are now and have always been in good physical and mental health. Legal guardians have not been appointed for any of them.

We restate the questions involved as follows: Under the trust agreement, in each instance, were gifts of present or future interest made within the meaning of section 1003 (b) (3) of the Internal Revenue Code? If the answer to this question is decided in favor of the respondent, i. e., that the gifts were of future interest, that answer is dispositive of the second issue. See *Commissioner* v. *Disston*, 325 U. S. 442. The petitioner in her reply brief concedes, in effect, that should our decision favor the respondent on the first issue, such a decision is dispositive of the second question. Petitioner's position with respect to both issues is that the trust instruments render all gifts made to the respective trusts gifts of present interest, thereby authorizing to the petitioner the $3,000 annual exclusion provided in section 1003 (b) (3). Petitioner has consistently, since the inception of said

trusts, taken the exclusion with the consent of respondent in all years except 1947 and claims she has properly done so.

Respondent's position is, in effect, that because of their minority the beneficiaries could not legally either demand or receive payment of any portion of the trust corpus or income, thus rendering all gifts those of a future interest. Petitioner, on the other hand, contends that the trust instruments here involved render all gifts made to the trusts those of present interest, and that section 1003 (b) (3) may not be construed so as to prevent gifts of present interest to beneficiaries merely because they have not attained their majority.

Petitioner further contends that *Fondren* v. *Commissioner*, 324 U. S. 18, a decision of the United States Supreme Court, has limited the field of inquiry in determination of this issue, and that this Court in *John W. Kieckhefer*, 15 T. C. 111, revd. (C. A. 7) 189 F. 2d 118, and *Arthur C. Stifel, Jr.*, 17 T. C. 647, affd. (C. A. 2) 197 F. 2d 107, and the Circuit Court of Appeals for the Second Circuit in affirming the *Stifel* case have erroneously interpreted and applied the Supreme Court's decision in *Fondren* and contends, in effect, that the respondent in his determination of the deficiency in this case is also guilty of the same transgression. Petitioner urges that *Fondren* and *Commissioner* v. *Disston*, *supra*, have conclusively settled the proposition that in construing a trust agreement, decision on the present or future character of the interests granted may not be based to any extent on facts and circumstances extrinsic to the trust instrument; that we may inquire what are the rights given the beneficiary by the instrument but may not take into consideration his capacity to exercise those rights.

Without passing upon the correctness or incorrectness of petitioner's understanding of *Fondren*, we base our decision here solely upon the provisions of the trust instruments. That the beneficiaries of these trusts may not receive any part of the corpus or income thereof upon their mere demand is obvious from a four corners consideration of the trust instruments. It is true that the first provision for distribution of the trust estate quoted above, taken by itself, would render all gifts those of present interest, for that provision imposes upon the trustees the duty to transfer the entire corpus and income of the trust to the beneficiaries upon demand without qualification and independent of any contingency. It is apparent, however, that later provisions in granting discretionary powers to the trustees have so limited the beneficiaries' rights to distribution upon demand as to render such right a virtual nullity. Under the grant of general powers to the trustees it is provided, in part, as follows:

The TRUSTEES, in so far as possible, shall invest and reinvest all funds from time to time available for investment or reinvestment in such investments,

*whether producing income or not,* as the TRUSTEES in their discretion shall deem proper and for the best interests of the TRUST ESTATE without being restricted by any present or future loss governing or restricting the investment of trust funds. * * * [Emphasis supplied.]

Thus, it is apparent that should the beneficiary at any time make demand for payment to him of the income only of such estate, receipt thereof would be contingent upon the trustees' willingness to reinvest the corpus in such a manner that income would be derived.

A more sweeping and limiting grant of power to the trustees does irreparable damage to petitioner's contention that the gifts here involved were those of present interest. The "payment and distribution" provision of the trust agreement in its opening clause absolutely prohibits a prime indicia of present use and enjoyment of any part of the corpus or income of the trust. This provision prevents the assignment or transfer by the beneficiary in whole or in part by his voluntary or involuntary act or by operation of law of any anticipation of payments of income or distribution of principal. Still more harmful to petitioner's contention are the provisions that upon demand of the beneficiary the trustees may at their discretion make payment to the beneficiary in person or to his duly qualified legal representative or "to some near relative or friend of such beneficiary; or * * * by the TRUSTEES using such payment directly for the benefit of such beneficiary." Such discretion is permitted the trustees in case the beneficiary is "incompetent." It is true that in this case none of the beneficiaries involved had ever been declared to be incompetent by a court of proper jurisdiction, as the agreement in defining the words "incompetent persons" first contemplates. Further defining those words, however, the agreement lends the entire trust instrument a contingent character which colors the nature of all gifts made thereto. It provides that the trustees may determine in their own discretion whether or not the beneficiary is "incapacitated [without definition of the word] to such an extent as, * * * [to] make it impossible or impractical [for the beneficiary] * * * to give prompt and intelligent consideration to business matters." It further provides that the trustees may require, accept, and act upon such evidence of competency or incompetency of a beneficiary as they in their discretion may deem appropriate and reliable, and that they may exercise such discretion without any resulting liability. Having determined that any of the beneficiaries (all in their minority in this case) were incapable of giving prompt and intelligent consideration to business matters, the trustees are empowered to make payments and distribution at their sole discretion, among other ways, by using such payments "*for the benefit*" of the beneficiary. Thus, it may be seen that the beneficiary's right to presently enjoy and possess either income or principal of the

trust here involved may be, at the whim of the trustees, entirely contingent upon the trustees' opinion as to his business acumen regardless of his age and even upon the trustees' opinion as to his tendencies toward promptness or procrastination with respect to business matters. This right in the trustees to make payment by way of use of the trust estate for the benefit of the beneficiary is akin to one of the attributes of the trust instrument involved in *Fondren, supra.* There the Court determined that a provision of the trust instrument giving the trustees the power to use the trust estate immediately in case of need on the part of the beneficiary created a contingency preventing present enjoyment and possession by the beneficiary of the trust estate because of the right in the trustees to exercise discretion in determining the existence of need. This discretionary power of the trustees, the Court held, rendered the gift that of a future rather than a present interest.

Petitioner contends that in any event under the trust instrument here involved the trustees are obligated to pay to the beneficiary in one of the ways specified in the trust instrument upon his demand and that such obligation renders ineffective, so far as the present interest character of the gift is concerned, any other qualifying or limiting provisions of the trust agreement. The same argument, in effect, was made in *Fondren* and there rejected by the Supreme Court.

Assuming, arguendo, that all of the beneficiaries of the trusts here involved were adults, even so the trust instruments could not be said to render the gifts here involved gifts of present interest. They would be contingent to adults for the same reasons they are contingent to minors.

In the event any one of the beneficiaries here involved were to make a demand upon the trustees for all or any part of the trust estate it is entirely within the power and discretion of the trustees to determine the beneficiary to be incompetent within the meaning of the trust instrument. Having so determined, the trustees may refuse absolutely to make any payment to the beneficiary whatsoever. This is true because the trustees having determined the incompetency of the beneficiary making the demand may at their sole discretion decide to make payment "by * * * using such payment directly for the benefit of such beneficiary." The beneficiary could not say, under the instrument, "I demand that you, Mr. Trustee, pay to me the entire trust estate." He could only say under this provision "I demand, Mr. Trustee, that you use the entire trust estate for my benefit." It can not be denied that the trust instrument, together with the general powers of investment and discretion therein granted to the trustees, was for the "benefit" of the beneficiary. Therefore, the trustee in that instance could say to the demanding beneficiary "I am using the entire trust estate as it is now vested under this trust instrument

executed by your grandmother for your 'benefit.'" There would be no provision of the trust instrument to which the beneficiary could point which would *require* the trustees to do otherwise.

Strict construction of the trust instrument, as we have pointed out, indicates that payment of any part of the trust estate is contingent solely upon the discretion of the trustees. On the other hand, also exercising discretionary power under the trust instrument, the trustees are empowered to pay any part or all of the trust estate directly to the beneficiary forthwith upon his demand. Thus the question is raised, because it is entirely possible for the trustees in their discretion to so treat the trust estate that gifts thereto would amount to present interests, are we to disregard other powers of the trustees, exercise of which would render gifts to the trust gifts of future interest? The Commissioner has determined the interest conveyed to be future in character. The burden is, therefore, upon the petitioner to show clearly that the interest conveyed is present in character. Section 1003 (b) (3) grants an exclusion which amounts to a tax exemption and must therefore be strictly construed. *Helvering* v. *Northwest Steel Rolling Mills*, 311 U. S. 46. We are therefore constrained to strictly construe the trust agreement. In *Fondren*, the Supreme Court, in discussing a contingency which, in its words, "puts the barrier of a substantial period between the will of the beneficiary or donee now to enjoy what has been given him and that enjoyment [which thus] makes the gift one of a future interest within the meaning of the regulation," had this to say with respect to discretionary powers reposed in the trustee:

if income is to be accumulated and paid over with the corpus at a later time, the entire gift is of a future interest, although upon specified contingency some portion or all of the fund may be paid over earlier. *The contingency may be the exercise of the trustee's discretion, either absolute or contingent.* It may also be the need of the beneficiary, not existing when the trust or gift takes effect legally, but arising later upon anticipated though unexpected conditions, either to create a duty in the trustee to pay over *or to permit him to do so in his discretion.* [Emphasis supplied.]

We therefore find that the respondent has properly rejected petitioner's exclusion under section 1003 (b) (3) in his computation of gift tax for the year 1947, and that respondent has properly disregarded exclusions taken by petitioner in the years 1944, 1945, and 1946 in his computation of petitioner's total net gifts and applicable tax rate for the year 1947. *Commissioner* v. *Disston, supra; Lillian Seeligson Winterbotham*, 46 B. T. A. 972; *Leo Wallerstein*, 2 T. C. 542 (Commissioner's appeal dismissed, C. A. 2, 1944).

*Decision will be entered for the respondent.*