## EXPORT LEAF TOBACCO CO. v. COMMISSIONER OF INTERNAL REVENUE.[*]

### T. C. WILLIAMS CO. v. SAME.

### SMITH PAPER CO. v. SAME.

Nos. 340–342.

Circuit Court of Appeals, Second Circuit.
June 17, 1935.

Hall, Cunningham, Jackson & Haywood, of New York City (John H. Jackson, Harrison M. Robertson, and Haig H. Davidian, all of New York City, of counsel), for petitioners.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key and J. P. Jackson, Sp. Assts. to Atty. Gen., for respondent Commissioner of Internal Revenue.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

[*]Writ of certiorari denied 56 S. Ct. 150, 80 L. Ed. —.

AUGUSTUS N. HAND, Circuit Judge.

The deficiencies of the above corporate taxpayers arise out of the fact that the Commissioner required each of them to compute its income upon the basis of a separate return. The only question before us is whether, under the circumstances presented, these taxpayers were entitled to report on a consolidated basis. The taxes affected are those for the year 1928.

Section 142 (a) of the Revenue Act of 1928, 26 USCA § 2142 (a), which in substance re-enacted section 240 (a) of the Revenue Act of 1926, 26 USCA § 993 (a), provided that: "Corporations which are affiliated within the meaning of this section may, for the taxable year 1928, make separate returns or, under regulations prescribed by the Commissioner with the approval of the Secretary, make a consolidated return of net income for the purpose of this title, in which case the taxes thereunder shall be computed and determined upon the basis of such return. If return for the taxable year 1927 was made upon either of such bases, return for the taxable year 1928 shall be upon the same basis unless permission to change the basis is granted by the Commissioner."

Under section 142 (c) of the Revenue Act of 1928, 26 USCA § 2142 (c), domestic corporations are "deemed to be affiliated (1) if one corporation owns at least 95 per centum of the stock of the other or others, or (2) if at least 95 per centum of the stock of two or more corporations is owned by the same interests."

In 1927 a foreign corporation known as British-American Tobacco Company, Limited, became owner of 99 per cent. of the stock of Export Leaf Tobacco Company of Delaware. The latter company had succeeded to the business and property of a New Jersey company of the same name, 99 per cent. of the stock of which was owned by the British-American Company in 1926. In 1926 the British-American Company also acquired all the stock of the T. C. Williams Company, a Virginia corporation, which conducted a tobacco business. In March, 1927, the Brown & Williamson Tobacco Corporation was organized and 95 per cent. of its stock was owned by the British-American Company. Brown & Williamson Tobacco Corporation likewise owned all of the stock of Brown & Williamson Tobacco Sales Corporation, which was organized June 5, 1928. On October 8, 1928, the Export Leaf Tobacco Company of Delaware acquired 95 per cent. of the stock of the Smith Paper Company, a Massachusetts corporation engaged in manufacturing cigarette papers.

From the foregoing, it is evident that before the end of 1928, Export Leaf Tobacco Company, T. C. Williams Company, Brown & Williamson Tobacco Corporation, Brown & Williamson Tobacco Sales Corporation, and the Smith Paper Company were all affiliated within the meaning of section 142 (c) of the Revenue Act of 1928, unless the fact that the British company was a foreign corporation made a difference. See section 238 of that act (26 USCA § 2238).

Export Leaf Tobacco Company of New Jersey and T. C. Williams Company filed separate income tax returns for the year 1926. Export of New Jersey, and Brown & Williamson filed a consolidated return for the period from January 1, 1927, to November 30, 1927, the date of dissolution of Export of New Jersey, and the latter's successor, Export of Delaware, and Brown & Williamson filed a consolidated return for the balance of 1927, while the T. C. Williams Company filed a separate return for that entire year. For the year 1928 Export of Delaware, T. C. Williams Company, Brown & Williamson, Brown & Williamson Sales Corporation, and the Smith Paper Company filed consolidated returns.

It appears from the foregoing that for 1926 the group, of which the British company was the parent, filed separate returns, and that for 1927 the group consisting of Export of New Jersey, its successor Export of Delaware, Brown & Williamson, and T. C. Williams, did not file a proper consolidated return for the reason that T. C. Williams filed a separate return. The election allowed by the statute had been exercised by filing separate returns for 1926 and by in effect continuing the same method of reporting in 1927, when one of the affiliates filed a separate return and the group neglected to file a consolidated return on behalf of all its members. Where one member of a group files a separate return, it has been generally held that all are bound by that return and must file separately. Duke Power Co. v. Commissioner, 44 F.(2d) 543 (C. C. A. 4), certiorari denied, 282 U. S. 903, 51 S. Ct. 217, 75 L. Ed. 795; Dr. Pepper Bottling Co. v. Commissioner (C. C. A.) 69 F.(2d) 768; Pictorial Review Co. v. Helvering, 63 App. D. C. 21, 68 F.(2d) 766, 769; Safety Electric Prod-

ucts Co. v. Helvering (C. C. A.) 70 F.(2d) 439. In section 240 (a) of the Revenue Act of 1926, and section 142 (a) of the Revenue Act of 1928, it is said that, if "return" is made upon either a separate or consolidated basis, the subsequent return "shall be upon the same basis unless permission to change the basis is granted by the Commissioner." We think that the "return" referred to in those sections evidently is a proper and lawful return and that some of the affiliates cannot file a consolidated return in disregard of others who neglect or refuse to join and thus leave the method of reporting to the choice not of the group, but of any members of it that may happen to find the method adopted temporarily advantageous. Such a method is quite out of keeping with the limited election afforded by the statute and would leave the basis for the imposition of income taxes to the caprice of the taxpayer though the statute requires a definitive and permanent election which the taxpayers must adhere to in the absence of permission of the Commissioner to change the basis.

█ It is argued that every addition of an affiliate changes the group and gives rise to a new right of election. But this is not so where the group remains substantially constant and the new member cannot fairly be said to destroy the integrity of a single business. Whether that happens in any particular case is a question of fact to be determined by how substantial is the change in the continuity of the business and whether two groups having little common relation are consolidated. Here the British Company was the parent and controlling head, and it from time to time absorbed other corporations into its business. Export, T. C. Williams, and Brown & Williamson owned property of the value of more than $19,000,000 having a gross income of about $36,670,000, while the Smith Paper Company, which was added to the group in 1928, had a probable gross business of about $2,400,000. There can be no doubt that the group had a continuity from 1926 to 1927, inclusive, and when it acquired the Smith Paper Company in 1928 absorbed a relatively small concern with a good business and made it in every sense a subsidiary. In Sweets Co. of America v. Commissioner, 40 F.(2d) 436 (C. C. A. 2), and in Swift & Co. v. United States, 38 F. (2d) 365 (Ct. Cl.) it was held that the mere entry into or withdrawal from a group of a new affiliate did not terminate the group or create a new tax computing unit. Doubtless a change may be so fundamental as to create a new and different group (Albert Leon & Son, Inc., v. Commissioner, 29 B. T. A. 251), but such a change will not occur if the dominant parent of all the affiliates remains the same. Huntington Beach, Inc., v. Commissioner, 30 B. T. A. 731, 735. It is this distinction that is mentioned in Marvel Equipment Co. v. Commissioner, 67 F.(2d) 354, 356 (C. C. A. 3), and we think renders the earlier decision by the same court in Stonega Coke & Coal Co. v. Commissioner, 57 F.(2d) 1030 (C. C. A. 3), subject to the limitations imposed by the general current of authority.

Inasmuch as individual returns were made by the members of the group for the year 1926 and no proper consolidated return was made by the group for the year 1927, we hold that an election to file separate returns for both of those years had been exercised. Consequently there was no right to change to a consolidated return for the year 1928 without the permission of the Commissioner, which was neither requested nor granted.

We have not overlooked the difficulty of treating affiliation as possible among the members of a group bound together in one business through the medium of a foreign corporation. Section 238, Revenue Act 1928, 26 USCA § 2238. But inasmuch as the Commissioner raised no objection to the filing of a consolidated return on this ground, we have assumed for the sake of argument that it alone would not render such a return unlawful and have only discussed the issues raised on the appeal. If affiliation was impossible either (1) because the members of the group had elected to file separate returns for 1926 and 1927, or (2) because the parent company was a foreign corporation, the result would be the same and the action of the Board would be right in either event. We have held it impossible upon the first ground.

█ Finally the taxpayers contend that because the Commissioner executed closing agreements, pursuant to section 606 of the Revenue Act of 1928, 26 USCA § 2606, settling the income tax liability of Export and Brown & Williamson for 1927 upon the basis of their consolidated returns, the consolidated returns which they attempted to make for the year 1927 became proper and lawful returns on the consolidated basis

166

and authorized the filing of consolidated returns for 1928. But the closing agreement was a mere arrangement to settle the amount of their taxes for 1927 and there is not the slightest reason to suppose that the Commissioner intended by it to change the status of the taxpayers as to future returns or in such an indirect way to afford them a new election. His consent was not to a consolidated return for 1927, because none in law had been filed. He merely compromised a claim and admitted nothing in law or in fact.

Orders affirmed.