CAMIEL THORREZ, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 57312. Filed December 31, 1958.

*Phillip C. Kelly, Esq.*, for the petitioner.
*Walter T. Hart, Esq.*, for the respondent.

## OPINION.

HARRON, *Judge:*

### *Issue 1.*

The trustee of each trust is directed during the minority of each beneficiary to accumulate the income and to reinvest such accumulated income as part of the corpus. When a beneficiary becomes 21 years of age, the trustee is directed to pay him his share of the corpus, including the accumulated income or the assets in which such income had been invested. During the minority of a beneficiary, the trustee may pay to a beneficiary, or his legal guardian, out of the trust estate such sums of money as the trustee deems advisable, "if" such beneficiary *"should need money for support or education and is unable to provide such money."* (Italics supplied.)

The sole question is whether the gifts to the trust were of "future interests" within the meaning of the statute and the regulation. See

662

sec. 1003(b)(3), 1939 Code, and Regs. 108, sec. 86.11.[1] If the gifts are to qualify as transfers of present interests, each beneficiary "must have the right presently to use, possess or enjoy the property," in addition to a vested right in the trust. *Fondren* v. *Commissioner*, 324 U.S. 18, 20; *Commissioner* v. *Disston*, 325 U.S. 442; *Ryerson* v. *United States*, 312 U.S. 405; and *United States* v. *Pelzer*, 315 U.S. 399. The question is not when title vests, but when enjoyment begins. *Commissioner* v. *Sharp*, 153 F. 2d 163, 164. The taxpayer claiming the exclusion under section 1003(b)(3) has the burden of showing that the value of what he claims is other than a future interest. *Commissioner* v. *Disston, supra.*

The most pertinent part of each trust instrument is the fourth article. It provides at the outset, in paragraph (b) that during the minority of the beneficiaries the trustee is to accumulate the net income, make reinvestment thereof, and hold the assets in which income is invested as part of the corpus. Pursuant to paragraph (d), the trustee is to hold all of the corpus of the trust until a beneficiary becomes 21 years of age, at which time the trustee shall pay him his share of the corpus (which will include the investments of the accumulated income). In paragraph (c) there is an exception to the direction to the trustee to accumulate the income and hold the corpus during the minority of each beneficiary, and the making of such exception is subject to the existence of two specified contingencies, namely, (1) that a beneficiary shall be in need for money for support or education, and (2) that the beneficiary shall be unable to provide such money. If these contingencies shall arise, the trustee is given the discretion to make distributions from the trust estate to a beneficiary, or his legal guardian, for the support or education of the beneficiary, of such sums of money as he deems advisable. In making distributions from a trust, in his discretion, a trustee is not limited to

---

[1] SEC. 1003. NET GIFTS.

(b) EXCLUSIONS FROM GIFTS.

\* \* \* \* \* \*

(3) GIFTS AFTER 1942. In the case of gifts (other than gifts of future interests in property) made to any person by the donor during the calendar year 1943 and subsequent calendar years, the first $3,000 of such gifts to such person shall not, for the purposes of subsection (a), be included in the total amount of gifts made during such year.

Regulations 108:

Sec. 86.11 Future interests in property.—

No part of the value of a gift of a future interest may be excluded in determining the total amount of gifts made during the calendar year. "Future interests" is a legal term, and includes reversions, remainders, and other interests or estates, whether vested or contingent, and whether or not supported by a particular interest or estate, which are limited to commence in use, possession, or enjoyment at some future date or time. The term has no reference to such contractual rights as exist in a bond, note (though bearing no interest until maturity), or in a policy of life insurance, the obligations of which are to be discharged by payment in the future. But a future interest or interests in such contractual obligations may be created by the limitations contained in a trust or other instrument of transfer employed in effecting a gift. For the valuation of future interests, see section 86.19(g).

making a distribution from income; he may make a distribution out of the "trust estate," which, of course, includes trust principal.

At the time the trusts were created, all of the beneficiaries were minors; their ages ranged from 4 months to 7 years; and there had not been an appointment of a legal guardian for any beneficiary. There is no evidence showing that at the time the trusts were created any beneficiary was in need of money for support or education. The evidence shows that from the time the trusts were created until 1957, a period of about 6 years, no payments were made from any of the 4 trusts for the support or education of any beneficiary, and that in 1957 and 1958 disbursements were made from only two of the trusts, which were for life insurance premiums and day school tuition.

Under the rules of the *Fondren* and *Disston* cases, *supra*, the gifts clearly were gifts of future interests, unless it can be said that this case is distinguishable because under each trust a parent of the beneficiaries is the trustee.  See, also, the following cases which set forth tests of whether gifts are of present or future interests, and which held that gifts were of future interests: *Welch* v. *Paine*, 120 F. 2d 141; *Commissioner* v. *Brandegee*, 123 F. 2d 58; *Welch* v. *Paine*, 130 F. 2d 990; *Helvering* v. *Blair*, 121 F. 2d 945; *Commissioner* v. *Taylor*, 122 F. 2d 714; *Commissioner* v. *Phillips' Estate*, 126 F. 2d 851; *Commissioner* v. *Gardner*, 127 F. 2d 929; *United States* v. *Pelzer, supra; Ryerson* v. *United States, supra; Willis D. Wood*, 16 T.C. 962; *Frances McGuire Rassas*, 17 T.C. 160, affd. 196 F. 2d 611; *Celia Goldstein*, 26 T.C. 506; *Abraham M. Katz*, 27 T.C. 783; *William Goehner*, 28 T.C. 542; and *Fred J. LaFortune*, 29 T.C. 479.  The following statement in *Fondren* v. *Commissioner, supra*, is pertinent here:

Accordingly, it has been held that if the income of a trust is required to be distributed periodically, as annually, but distribution of the corpus is deferred, the gift of the income is one of a present interest, that of the corpus one in futuro. Fisher v. Commissioner, 132 F. 2d 383; Sensenbrenner v. Commissioner, 134 F. 2d 883. A fortiori, if income is to be accumulated and paid over with the corpus at a later time, the entire gift is of a future interest, although upon specified contingency some portion or all of the fund may be paid over earlier. The contingency may be the exercise of the trustee's discretion, either absolute or contingent. It may also be the need of the beneficiary, not existing when the trust or gift takes effect legally, but arising later upon anticipated though unexpected conditions, either to create a duty in the trustee to pay over or to permit him to do so in his discretion.

The narrow question in this case is whether each beneficiary received in 1951, when the gifts to the trusts were made, the right presently to use, possess, or enjoy the income or the principal of a trust because his parent was trustee of the trust, or because of any provision contained in paragraph (c) of the fourth article of each trust. Petitioner cites no authority or any persuasive reason why the fact that a parent of beneficiaries was the trustee serves to make the gifts

in question ones of present interests. Petitioner's contention suggests that his position is that it can be implied, merely because a parent of beneficiaries was the trustee, that each beneficiary could demand at any time that a distribution should be made of all or any part of income, accumulated income, or principal. Such contention cannot be sustained.

Under the Thorrez trusts no one was empowered to make a demand at any time for distribution of all or part of the income or principal of a trust. The lack of such power is decisive. A provision in a trust which specifies that only upon the existence of a contingency some portion of a trust fund may be distributed to a beneficiary cannot be construed to constitute clear and unambiguous language empowering a beneficiary or his legal guardian to demand at any time a distribution of income or principal of the trust for or to the minor, even though the trustee happens to be a parent of the minor. In *Fred J. LaFortune, supra* at 486, the following is stated:

A trustee, simply because he is a beneficiary's parent, cannot be said to stand in the shoes of the beneficiary. See *Frances McGuire Rassas*, 17 T.C. 160, affd. 196 F. 2d 611, and *Welch* v. *Paine, supra*, for cases in which the court apparently ignored the fact that the parent or parents of the beneficiaries were named as trustees and held, under similar trust provisions, that neither the beneficiaries nor anyone standing in the shoes of the beneficiaries, could make an effective demand for the property. We so hold in the instant case. We, therefore, conclude that the gifts of corpus made in 1951 and 1952 were gifts of future interests for which the petitioners are not entitled to any annual exclusion.

In *George W. Perkins*, 27 T.C. 601, a settlor created separate trusts for his grandchildren. A corporation, the settlor, and the parents of the individual beneficiaries were named cotrustees under each trust. Income of the trusts was to be applied in the discretion of the trustees for education, support, and maintenance of the beneficiaries until the age of 25. Accumulated income was to be paid to the beneficiary at the age of 21, and then currently as earned until the age of 25, when each trust was to terminate. Each trust instrument also provided that the beneficiary, or his parent, or duly qualified guardian, could *demand at any time all or any part of the principal and accumulated income*. In concluding that the gifts in the *Perkins* case were of present interests, we held that there was at all times someone who could, under each trust agreement, make an effective demand for principal and income. We stated that (p. 605) "[t]he parents of the beneficiaries were given the power by clear and unambiguous language to demand and receive on behalf of their respective children all or part of the principal and accumulated income." We warned, however:

Had the power to demand income or principal been limited to the beneficiaries or their duly appointed guardians, respondent's position, at least as to all gifts other than the two aforementioned, might well be tenable; there would have been at the time such gifts were made no person who could make an effective demand

for immediate use, possession, and enjoyment by the beneficiaries. *Stifel* v. *Commissioner*, 197 F. 2d 107 (C.A. 2), affirming 17 T.C. 647. * * *

There is no provision in the Thorrez trusts which gives to a parent of each beneficiary, or a duly appointed guardian, the right at any time *to demand and receive as property of the beneficiary all or part of the income, principal, and accumulated income.* Rather, payments from each trust estate are within the discretion of each trustee and are contingent upon the existence of need. We cannot conclude here, as was done in the *Perkins* case, that gifts to the trusts were not of future interests.

Paragraph (c) of the fourth article of the Thorrez trusts clearly incorporates a condition precedent for the making of any distribution from the trust estate before a beneficiary attains the age of 21 years, namely, the need for money for support or education. "If" such contingency arises, some portion of trust income or principal, or both, may be paid to a beneficiary, or his legal guardian, before the beneficiary becomes 21 years old. There is no evidence here that the need of any beneficiary for money for support or education existed at the time the Thorrez trusts were created. Absent such evidence, it must be concluded, and assumed, that no such need existed. The petitioner's burden of proof encompassed this matter, and he has failed to establish that the circumstances surrounding the donees at the time the trusts were created and the gifts were made were such that the contingency stated by the explicit terms of the trusts then existed. Under the provisions of paragraph (c) of the trusts, the need referred to was a contingency to be realized in the future and until realized the contingency stood squarely in the way of any grandchild's receiving a single dollar from a trust fund. *Fondren* v. *Commissioner, supra.* Under the trust instruments no beneficiary was given an absolute right to the immediate enjoyment of income or principal. *Welch* v. *Paine, supra.*

We recognize that a court of equity would take cognizance of the interest of each beneficiary in a trust estate which is covered by the provisions of paragraph (c), which gives the trustee the discretionary power to make payments from the trust estate before a beneficiary reaches 21 years, *if* the need arises for money for the support or education of a beneficiary. But, at the very least, a beneficiary would have to show, before a court of equity would compel a trustee to exercise his discretionary power in favor of a beneficiary, that the parents of the beneficiary were unable or unwilling to provide for the support or education of their minor child. See Restatement, Trusts, par. 187. Thus, whether the enjoyment of income or principal might arise from a future act of the trustee or from a change in the economic circumstances of the parents of a beneficiary, such beneficiary, as of the date of the gift, did not receive the right to immediate beneficial enjoyment

of any part of the income or principal of a trust. *Welch* v. *Paine, supra* at 992.

It must be noted, further, that because of the contingency contained in paragraph (c) of each trust instrument, the interest of each beneficiary is inherently incapable of valuation. See *Commissioner* v. *Brandegee, supra*, and *Commissioner* v. *Disston, supra*. There is always the question how much, if any, of the income or principal of each trust can actually be applied in any year for the permitted purpose of the support or education of a beneficiary. The existence of a discretionary power, upon the occurrence of a specified contingency, to make payments from the trust estate to a beneficiary or his legal guardian gives no clue to the amounts that will be needed for the stated purpose, or to the requirements for support and education that were foreseeable at the time the gifts were made. The taxpayer claiming exclusions under section 1003(b)(3) has the burden of showing that the value of what he claims is other than a future interest. *Commissioner* v. *Disston, supra; Willis D. Wood*, 16 T.C. 962, 967; *Jennie Brody*, 19 T.C. 126, 132. That burden has not been satisfied in this case.

Consideration has been given to *Commissioner* v. *Sharp, supra; Gilmore* v. *Commissioner*, 213 F. 2d 520, reversing 20 T.C. 579; *Kieckhefer* v. *Commissioner*, 189 F. 2d 118; and *United States* v. *Baker*, 236 F. 2d 317. In each of those cases, it was held that under the provisions of the respective trusts a gift was made of a present interest. In general, the conclusion was supported in each case by trust indenture provisions which clearly specified that a trustee was to pay the income or principal of the trust *on demand of the beneficiary;* the beneficiary's right to demand gave him an unconditional right to the present use, possession, or enjoyment of the property. In the Thorrez trusts there is no provision giving a beneficiary, or anyone standing in his shoes, the right to demand payment at any time of income or principal. The above-cited cases are distinguishable and do not give support to petitioner.

Respondent points out under Michigan law a parent is only a natural guardian, that a natural guardian is guardian of the person only, having no control over any estate the ward may possess, and that a natural guardian cannot be given control over the ward's estate except upon judicial proceedings. *Power* v. *Harlow*, 57 Mich. 107, 23 N.W. 606; *Babcock* v. *Fisk*, 327 Mich. 72, 41 N.W. 2d 479. It is not necessary to comment upon this point, but it is pertinent to note that the offices of trustee and legal guardian are separate and distinct from and independent of each other and, ordinarily, must be treated as such if there is to be an orderly performance of the duties of each office in conformity with established rules governing the conduct of fiduciaries. See *McMahon* v. *Krapf*, 323 Mass. 118, 80 N.E. 2d 314, 320, and the

cases there cited. Applying this rule to the Thorrez trusts, it is evident that each parent of the beneficiaries assumed distinct fiduciary duties when he agreed to act as a trustee of a trust. As a trustee, a parent was under the duty of administering the trust according to its terms, and of faithfully carrying out his fiduciary obligations thereunder. In his separate capacity as a parent of minor children, he had a legal duty to provide for the support and maintenance of his children during their minority. His fiduciary duties as a trustee were separate and apart from his individual, legal duties as a parent. Furthermore, each of the grandchildren of the settlor of the trusts had the legal right during his minority to look to his parents for support and education. Under the circumstances, it is to be assumed that each minor beneficiary could look to the trust estate, over and beyond his parents, for funds for support or education during his minority, only in instances of need. We think it is entirely clear that the provisions of paragraph (c) of the fourth article of the trust indentures are in harmony with the above principles, and in the light of them we find it impossible to construe the pertinent provisions of the Thorrez trusts as giving the beneficiaries, or anyone standing in their shoes, a right to demand at any time distributions from a trust estate, i.e., an unconditional right to the present use, possession, or enjoyment of the property.

It is held that the petitioner's gifts to the trusts were gifts of future interests and, therefore, that the multiple exclusions claimed under section 1003 (b) (3) are not allowable.

## Issue 2.

The petitioner claims that he is entitled, under the provisions of section 1000(f),[2] to have the 1951 gifts to the Thorrez trusts con-

---

[2] SEC. 1000. IMPOSITION OF TAX.

(f) GIFT OF HUSBAND OR WIFE TO THIRD PARTY.—

(1) CONSIDERED AS MADE ONE-HALF BY EACH.—

(A) In General.—A gift made after the date of the enactment of the Revenue Act of 1948 by one spouse to any person other than his spouse shall, for the purposes of this chapter, be considered as made one-half by him and one-half by his spouse, but only if at the time of the gift each spouse is a citizen or resident of the United States. * * *

(B) Consent of Both Spouses.—Subparagraph (A) shall be applicable only if both spouses have signified (in accordance with the regulations provided for in paragraph (2)) their consent to the application of subparagraph (A) in the case of all such gifts made during the calendar year by either while married to the other.

(2) MANNER AND TIME OF SIGNIFYING CONSENT.—

(A) Manner.—A consent under this subsection shall be signified in such manner as is provided under regulations prescribed by the Commissioner with the approval of the Secretary.

(B) Time.—Such consent may be so signified at any time after the close of the calendar year in which the gift was made, subject to the following limitations—

(i) the consent may not be signified after the 15th day of March following the close of such year, unless before such 15th day no return has been filed for such year by either spouse, in which case the consent may not be signified after a return for such year is filed by either spouse;

sidered as having been made one-half by himself and one-half by his wife. He relies solely upon the provisions of subsection (2) (B) (ii), and argues that the Commissioner erred in not regarding as the consent of both spouses, required by subsections (1) (B) and (2) (B), the amended gift tax return for 1951 which he attempted to file during October 1954, because at that time the statutory deficiency notice (dated January 14, 1955) had not been issued.

Petitioner's contention is without merit and is rejected.

In order that a taxpayer may have gifts to third parties treated as having been made one-half by his spouse and one-half by himself, the consent of both spouses to such treatment must be signified in the first gift tax return filed in accordance with the provisions of section 1000(f) and regulations prescribed by the Commissioner. This involves the making of an election by the spouses. The making of an election is involved where a taxpayer has a choice of two methods of computing his tax, each of which is legal. Where the doctrine of election is applied, the taxpayer is not permitted to change his mind to the detriment of the revenue. *Ross* v. *Commissioner*, 169 F. 2d 483, 493. An oversight, or an error of judgment, or lack of knowledge of the law, or a failure to make a claim in the first return filed, in which a claim should have been made, precludes the taxpayer from later attempting to make an election where he has failed to comply with a statutory condition precedent to making the claim. *Dorothy Glenn Coal Mining Co.*, 38 B.T.A. 1154; *C. H. Mead Coal Co.*, 38 B.T.A. 1163; *Pacific National Co.* v. *Welch*, 304 U.S. 191; *Export Leaf Tobacco Co.* v. *Commissioner*, 78 F. 2d 163, affirming 31 B.T.A. 28; *Alameda Investment Co.* v. *McLaughlin*, 33 F. 2d 120; *Riley Co.* v. *Commissioner*, 311 U.S. 55, affirming 110 F. 2d 655, which affirmed a Memorandum Opinion of this Court.

Petitioner's gift tax return for 1951 was due on either March 15 or March 17, 1952. Regs. 108, sec. 86.22. (There is no issue involving the date of filing; March 15, 1952, fell on Saturday; the return bears a stamp showing that it was received in the collector's office on March 17, 1952, which fell on Monday.) Under the provisions of subsection (B) (i), in a case like this, the consent of the spouses may be specified at any time after the end of the year in which the gifts were made up to the time of the filing of the first gift tax return of a spouse; the consents may not be signified after a return for such year has been filed by either spouse. The purpose of subsection (B) (i) appears to

---

(ii) the consent may not be signified after a notice of deficiency with respect to the tax for such year has been sent to either spouse in accordance with section 1012 (a).

\*     \*     \*     \*     \*     \*     \*

(4) JOINT AND SEVERAL LIABILITY FOR TAX.—If the consent required by paragraph (1)(B) is signified with respect to a gift made in any calendar year the liability with respect to the entire tax imposed by this chapter of each spouse for such year shall be joint and several.

have been to preclude, for administrative convenience, more than one opportunity for a donor-taxpayer to claim the consent of his spouse. *Alex Frieder*, 28 T.C. 1256, 1258. See also Regs. 108, sec. 86.3a,[3] which section was added to the regulations by T.D. 5698, 1949–1 C.B. 226, 228.

Petitioner filed his gift tax return for 1951 when it was due, but in that return the consents of both spouses were not signified. The provisions of subsection (B)(i) preclude the petitioner from making the election provided for in section 1000(f) in another gift tax return for 1951, subsequent to the filing of his first return for such taxable year. The provisions of subsection (B)(i) might have been worded in a better way, but they mean that where a gift tax return has been filed, either on or before March 15, or after March 15, the consents of the spouses may not be signified after such gift tax return has been filed.

---

[3] Regulations 108, as amended:

SEC. 86.3a. GIFT OF HUSBAND OR WIFE TO THIRD PARTY AFTER APRIL 2, 1948.—(a) *In general.*—Section 1000(f), as added by section 374 of the Revenue Act of 1948, makes provision whereby a gift made after April 2, 1948, by one spouse to a person other than his spouse may, for the purpose of the gift tax, be considered as made one-half by him and one-half by his spouse, but only if at the time of the gift each spouse was a citizen or resident of the United States. For the purposes of section 1000(f) an individual is to be considered as the spouse of another individual only if he is married to such individual at the time of the gift and does not remarry during the remainder of the calendar year.

The provisions of section 1000(f) will apply only if both spouses consent. As to the manner and time of signifying such consent, see paragraph (b) of this section. Such consent, if signified with respect to any calendar year, is effective with respect to all gifts made to third parties during such year, except as follows:

\*    \*    \*    \*    \*    \*    \*

The consent applies alike to gifts made by one spouse alone and to gifts made partly by each spouse, provided such gifts were to third parties and do not fall within any of the foregoing exceptions. The consent may not be applied only to a portion of the property interests constituting such gifts.

If consent to the application of the provisions of section 1000 (f) is signified as provided in paragraph (b) for any calendar year and not revoked as provided in paragraph (c), the liability with respect to the entire gift tax of each spouse for such calendar year shall be joint and several.

(b) *Manner and time of signifying consent.*—Consent to the application of the provisions of section 1000(f) with respect to a calendar year shall, in order to be effective, be signified by both spouses. If both spouses file gift tax returns, Form 709, within the time for signifying consent it is sufficient if (1) the consent of both spouses is signified on one of such returns or (2) the consent of one spouse is signified on one such return and the consent of the other spouse is signified on the other return. If only one spouse files a gift tax return within the time provided for signifying consent, the consent of both spouses shall be signified on such return. However, wherever possible notice of the consent is to be shown on both returns. The consent may be revoked only as provided in paragraph (c) of this section. (As to whether one or both spouses are required to file returns, see section 86.20.) Where one spouse files more than one Form 709 for a calendar year on or before the 15th day of March following the close of such year, the last Form 709 so filed will, for the purpose of determining whether a consent has been signified, be considered as the return.

The consent may be so signified at any time after the close of the calendar year, subject to the following limitations—

(1) the consent may not be signified after the 15th day of March following the close of such year, unless before such 15th day no return has been filed for such year by either spouse, in which case the consent may not be signified after a return for such year is filed by either spouse; and

(2) the consent may not be signified after a notice of deficiency with respect to the tax for such year has been sent to either spouse in accordance with section 1012(a).

Petitioner's reliance upon subsection (B)(ii) is misplaced. Under the facts of this case, the provisions of that subsection are inapplicable. The provisions of subsection (B)(ii) establish the final limitation upon the time within which the election under section 1000(f) can be made, but they do not serve to alter or enlarge the provisions of (i).

The proposed gift tax return for 1951, with the required consents of the spouses, which petitioner attempted to file in October 1954 was untimely. It was not error for the Commissioner to reject, or to give no effect, to that proposed gift tax return. It could not serve to provide the consents of the spouses because petitioner had filed a gift tax return for 1951, and having filed a return which did not contain the consents of the spouses, the provisions of subsection (2)(B)(i) precluded signifying the consents thereafter. Generally, statutory provisions which allow the making of an election must be strictly construed and applied. See *Burke & Herbert Bank & Trust Co.*, 10 T.C. 1007, 1009; *Frank T. Shull*, 30 T.C. 821; *R. H. Macy & Co.* v. *United States*, 255 F. 2d 884, reversing 148 F. Supp. 377; and *Kaufmann & Baer Co.* v. *United States*, 137 F. Supp. 725, certiorari denied 352 U.S. 835.

It is held that petitioner is not entitled under section 1000(f) to have the gifts made in 1951 considered as having been made one-half by himself and one-half by his wife.

### *Issue 3.*

Under the provisions of section 1004(a)(1),[4] deduction is allowable in determining the amount of net gifts with respect to a lifetime exemption of $30,000. The $30,000 exemption either may be taken in its entirety in a single year, at the option of the donor, or it may be spread over a period of years in such amounts as the donor sees fit, but after the limit has been reached no further exemption is allowable. If the donor does not elect to use the full amount of the specific exemption in one year, the amount thereof which is available for a succeeding year, or years, is $30,000, less the sum of the amounts

---

[4] SEC. 1004. DEDUCTIONS.

In computing net gifts for the calendar year 1943 and subsequent calendar years, there shall be allowed as deductions:

(a) RESIDENTS.—In the case of a citizen or resident.—

(1) SPECIFIC EXEMPTION.—An exemption of $30,000, less the aggregate of the amounts claimed and allowed as specific exemption in the computation of gift taxes for the calendar year 1932 and all calendar years intervening between that calendar year and the calendar year for which the tax is being computed under the laws applicable to such years. This exemption shall be applied in all computations in respect of the calendar year 1942 and previous calendar years for the purpose of computing the tax for the calendar year 1943 or any calendar year thereafter.

claimed and allowed as an exemption in prior calendar years. Regs. 108, sec. 86.12.[5]

Petitioner claimed and deducted the full amount of the specific exemption in his gift tax return for 1951. He reported total gifts in 1951 of $61,767.04, from which he deducted multiple exclusions ($3,000 for each gift) of $30,000, leaving $31,767.04, and from the latter amount he deducted the specific exemption of $30,000, which left $1,767.04, as the amount of net gifts. The Commissioner determined that there should be subtracted from the specific exemption of $30,000, the total amount of the exemptions claimed and allowed for prior years, namely $8,080.04 for 1941 and $3,960 for 1946, or $12,040.04, and that only $17,959.96 of the specific exemption remained and was available for deduction from the amount of the gifts made in 1951.

Petitioner now agrees that $3,960 of the specific exemption was claimed and allowed as a deduction for gifts made in 1946, and, therefore, he no longer contests the Commissioner's determination to that effect; but he contends that with respect to the gifts made in 1941, no amount should be charged against the specific exemption because the Commissioner determined that for the year 1941 petitioner was taxable on the income of the property which was the subject of the 1941 gifts, namely, interests in a partnership. See *Camiel Thorrez*, 5 T.C. 60, affd. 155 F. 2d 791, which sustained the Commissioner's determination for income tax purposes.

Petitioner cannot and does not deny that in his gift tax return for 1941, he applied the specific exemption to net gifts in the amount of $8,080.04 and that as a result no gift tax for 1941 was due, or paid. He does not contend that he ever rescinded the gifts of interests in the Michner Plating Co. partnership, or that under Michigan law completed gifts thereof were not made in 1941. Cf., for example, *William H. Board*, 14 T.C. 322, where donees made a subsequent reconveyance of property to the donor after the donor received advice that his purpose of escaping estate tax had failed, which is not the situation here. Cf., also, *Stone* v. *Stone*, 319 Mich. 194, 29 N.W. 2d 271; and *Lowry* v. *Kavanagh*, 322 Mich. 532, 34 N.W. 2d 60.

---

[5] Regulations 108.

Sec. 86.12. **Specific exemption.**—In determining the amount of net gifts for the calendar year there may be deducted, if the donor was a citizen or resident of the United States at the time the gifts were made, a specific exemption of $30,000 ($40,000 if the calendar year is 1940, 1941, or 1942), less the sum of the amounts claimed and allowed as an exemption in prior calendar years. The exemption, at the option of the donor, may be taken in its entirety in a single year, or be spread over a period of years in such amounts as he sees fit, but after the limit has been reached no further exemption is allowable. In determining the aggregate sum of the net gifts for the preceding calendar years (see section 86.7), the total amount of the specific exemption claimed and allowed for such preceding years should be deducted * * *. The specific exemption is authorized only in the case of a citizen or resident of the United States. A donor who was a nonresident not a citizen of the United States at the time of the gift or gifts is not entitled to this exemption.

Petitioner argues that the specific exemption should not be charged with $8,040.04 for the 1941 gifts because the Commissioner refused to recognize *for income tax purposes* (with respect to the taxable year 1941) the gifts which petitioner made in 1941 to his wife and three sons of parts of his interest in Michner Plating Co., a partnership. See *Camiel Thorrez, supra.* The only authority cited by petitioner in support of his position is a ruling of the Commissioner which involved an equal division of community property by a husband and his wife, which was held not to result in a taxable gift, following *Rickenberg* v. *Commissioner,* 177 F. 2d 114, and *Commissioner* v. *Mills,* 183 F. 2d 32, and, therefore, not to result in the use of any portion of the specific exemption. See Rev. Rul. 55–709, 1955–2 C.B. 609. Petitioner makes an exceedingly brief argument under this issue. He has the burden of proof, of course.

All of the facts have been stipulated.[6] According to the stipulation petitioner was allowed to apply $8,080.04 of the specific exemption to his 1941 gifts and, therefore, no gift tax was due or paid.[7]

Neither the ruling cited by petitioner nor the cases referred to in the ruling, *supra,* have any bearing on the question at issue, and they do not aid petitioner.

It is our understanding that the real contention of the petitioner is derived from the reasoning of this Court in *Camiel Thorrez, supra,* at 69, underlying its conclusion that petitioner's wife and three sons could not be recognized as members of the Michner Plating Co. partnership for income tax purposes, which included the statement that the petitioner (and others) "failed both in creating a bona fide business partnership and in making the completed gifts (of undivided interests in an existing partnership) upon which the partnership was dependent." The quoted statement was, however, only dictum, and it was subsequently pointed out by the Supreme Court in *Commissioner* v. *Tower,* 327 U.S. 280, involving the same question, that it was not necessary to decide whether a gift of part of a taxpayer's interest in a partnership to a member of the taxpayer's family was effective for tax purposes, i.e., was unconditional and complete, in order to decide the question whether the donee should be regarded, for income tax purposes, as a bona fide partner, so as to be taxable on partnership income. The Court of Appeals for the Sixth Circuit affirmed this Court's decision in the *Thorrez* case, *supra,* upon the authority and the reasoning of the *Tower* case, *supra,* and *Lusthaus* v. *Commissioner,*

---

[6] The parties did not introduce into the record of this case the record in *Camiel Thorrez,* Docket Nos. 3250–3253, 5 T.C. 60. See *B. F. Edwards,* 39 B.T.A. 735, 738, where it was held that this Court cannot take judicial notice of matters merely by reason of the fact that they are contained in its files.

[7] On brief petitioner states that he "claimed the exemption (of $8,080.04) in 1941, but it was not allowed." The latter part of this statement is not correct according to the stipulated facts.

327 U.S. 293, and it did not regard as either significant or controlling this Court's dictum that the 1941 gifts of petitioner of interests in the partnership to his wife and sons were not "completed gifts upon which the partnership was dependent." The issue in the *Thorrez* case was limited to whether the wife and sons "really and truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both." This Court held that they did not, and that conclusion was affirmed, however, on different reasoning than this Court adopted.

We are obliged to state in this case that what we said in the *Thorrez* case apropos of the gifts of petitioner of partnership interests to members of his family must be read in the context of the income tax issue there decided, which was that the gifts did not serve to relieve petitioner from tax upon the income attributable to such partnership interests. There was no issue in the *Thorrez* case, and there is no issue raised by the pleadings here, which presents the question whether petitioner in 1941 made valid and complete gifts of property to his wife and sons, consisting of parts of his partnership interest, which constituted taxable gifts. Absent proof here to the contrary, the question presented in this case must be considered on the assumption that petitioner intended and did make completed gifts in 1941 of property to his wife and sons. We turn, therefore, to consideration of the issue to be decided.

Although it was held in *Camiel Thorrez, supra*, that the transfers to petitioner's wife and sons of parts of his interest in the Michner Plating Co. partnership did not relieve him from income tax liability on all of the income attributable to the entire partnership interest which he originally held prior to his gifts, such holding does not preclude taxation of the transfers of property under the gift tax statute. In *Commissioner* v. *Tower, supra*, the Supreme Court pointed out that, "[a] person may be taxed on profits earned from property, where he neither owns nor controls it. *Lucas* v. *Earl*, supra.'" In footnote 7 to the opinion, it was stated, "Under some circumstances income has been held taxable to a person even when he does not own or control it. *United States* v. *Joliet & Chicago R. Co.*, 315 U.S. 44, 46, 62 S. Ct. 442, 444, 86 L. Ed. 658." See also *Higgins* v. *Commissioner*, 129 F. 2d 237, certiorari denied 317 U.S. 658; *Commissioner* v. *Beck's Estate*, 129 F. 2d 243; *Commissioner* v. *Prouty*, 115 F. 2d 331; and *Sax Rohmer*, 21 T.C. 1099, 1103; and cf. *James H. Hogle*, 7 T.C. 986, affd. 165 F. 2d 352. It has been pointed out that "the income tax and gift tax each has its own independent criteria of taxability." *Lockard* v. *Commissioner*, 166 F. 2d 409, 412.

674

Upon the facts before us, it cannot be held that the transfers of property by petitioner in 1941 to his wife and sons did not constitute taxable gifts within the broad scope of the gift tax statutes. *Smith* v. *Shaughnessy*, 318 U.S. 176, 180.

The petitioner claimed and was allowed in his 1941 gift tax return a specific exemption of $8,080.04 in respect to the gifts in question. Under the provisions of section 1004(a)(1), he is required to deduct from the lifetime exemption of $30,000 the specific exemption of $8,080.04 claimed and allowed for 1941. The respondent has correctly determined, therefore, that the total amount of the specific exemption for gifts in prior years which petitioner has used is $12,040.04, which includes the above amount, and that, accordingly, only $17,959.96 of the specific exemption was available for application to petitioner's 1951 gifts. Under this issue, the respondent's determination is sustained.

*Decision will be entered for the respondent.*