### STIFEL v. COMMISSIONER OF INTERNAL REVENUE.

No. 233, Docket 22294.

United States Court of Appeals, Second Circuit.

Argued April 17, 1952.

Decided May 15, 1952.

---

4. New Jersey Fidelity & Plate Glass Ins. Co. v. Clark, 1929, 9 Cir., 33 F.2d 235, which is relied on for a contrary ruling was decided under Oregon law and before the decision in Erie Railroad Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct.

817, 82 L.Ed. 1188, which commands us to apply state law to matters of this character. See, Williams v. Green Bay & Western Railroad Co., 1946, 326 U.S. 549, 550, 66 S.Ct. 284, 90 L.Ed. 311. Confronted then, as we are, with deci-

sions of the highest courts of California interpreting insurance contracts like the one involved in this case, we must follow them even in the face of a decision of our own giving a contrary interpretation, made *prior* to the decision in Erie Railroad Co. v. Tompkins, supra.

Robert L. Fay, Wallingford, Conn., for petitioner.

Ellis N. Slack, Washington, D. C. (I Henry Kutz, Washington, D. C., of counsel), for respondent.

Before SWAN, Chief Judge, and AUGUSTUS N. HAND and FRANK, Circuit Judges.

FRANK, Circuit Judge.

■ If an adult had been the beneficiary of each of these trusts, of course the gifts

would not have been of future interests, since then (under Article Third) each such adult at any time could have demanded payment of income and (under Article Eleventh) of the corpus.[2] But here we have the following differentiating facts: (1) None of the children could himself make such a demand; he could do so only through a guardian. (2) The donor testified as follows: He had set up the trusts for the express purpose of teaching the three children how to invest their own money; his attorney had suggested naming a guardian in the instrument, but the donor had objected, because a guardian would be limited by law in what use he could make of the income on the children's behalf, and would be unable to allow them free play in the pecuniary education the donor wanted them to have. (3) No guardian was appointed during the period of three years from the creation of the trusts to the date of the trial here, although in New York, consent of the donor, the father, would not apparently have been necessary to the appointment of a guardian.[3] On these facts the Tax Court concluded, and we agree, that only future interests were conveyed at the time the trusts were set up.

■ It is urged that neither the Tax Court nor we may properly consider these items, since they involve restrictions not contained in the trust instrument. Cf. Kieckhefer v. Commissioner, 7 Cir., 189 F.2d 118, 122. But in Fondren v. Commissioner, 324 U.S. 18, 24, 65 S.Ct. 499,

89 L.Ed. 668, and Commissioner v. Disston, 325 U.S. 442, 449, 65 S.Ct. 1328, 89 L.Ed. 1720, the Supreme Court, in determining the nature of the rights conferred by the trust instruments, took account of "surrounding circumstances"; the Court, in reaching its determinations, did not irrevocably lock itself inside the "four corners" of the writings but held that the key might lie outside. Were this not the rule, a donor could make gifts which on paper were 100% present but in practice were 100% future.

The Court of Appeals, in the Kieckhefer case, expressed the fear that no gift to a minor would be tax-free if the child's right at once to enjoy the fruits of the gift constituted the sole test of a present interest, since (it was said) the child's guardian or parent will always exercise control of some sort over the disposition of the child's property, so that only if the child's rights were those of "a boy to his top" or a "girl to her doll" would the gift be tax-free.[4] We believe this view under-estimates the traditional judicial knack of line-drawing. If here, for instance, the donor had, in the instrument, appointed a guardian to exercise the children's election rights, or indeed even if a next best friend of the children had successfully petitioned for one at the time the trust first was set up, the result might very well be different.[5] Then there would have been someone who, on the children's behalf, could have made an effective demand for income or corpus on the trustees under

2. The trust instrument itself seems to confer the rights—to demand income (Article Third) and to terminate the trust (Article Eleventh)—on the beneficiary directly, without making the intervention of a guardian necessary even during minority. The Commissioner, however, has argued that the instrument itself, in Article Eleventh, requires that the election to terminate be made by a guardian. The Tax Court was not entirely clear in its opinion whether the necessity of a guardian stemmed from the instrument or from legal disqualifications. In any event, whether the need for a guardian was intrinsic or extrinsic here is immaterial to the outcome; taking the view more favorable to the taxpayer, we are here considering the need as extrinsic. Cf. Kieck-

hefer v. Commissioner, 7 Cir., 189 F. 2d 118.

3. Surrogate's Court Act, §§ 173, 175; see Matter of Stuart, 280 N.Y. 245, 249, 20 N.E.2d 741; Matter of Gustow, 220 N.Y. 373, 115 N.E. 995. No one of the children here was over 14, however, and therefore none could himself petition for a guardian's appointment. See Spyrous Skouras, 14 T.C. 523. Surrogate's Court Act, § 175.

4. See Note, 37 A.B.A.J. 78; cf. Fleming, Gifts For the Benefit of Minors, 49 Mich.L.Rev. 529; Note, 100 Un. of Pa. L.Rev. 905.

5. It would then seem to be proper to consider the actual facts as to the father's influence on the guardian appointed.

Articles Third and Eleventh. Here, there was no one who could exercise their election rights for them; consequently they acquired only "future interests," not subject to immediate capture.

Affirmed.