D. Clifford Crummey v. Commissioner. Ethel Elizabeth Crummey v. Commissioner.
Crummey v. Commissioner
Docket Nos. 4908-64, 4909-64.
United States Tax Court
T.C. Memo 1966-144; 1966 Tax Ct. Memo LEXIS 137; 25 T.C.M. (CCH) 772; T.C.M. (RIA) 66144; June 24, 1966
Lee M. Galloway, for the petitioners. Harry M. Asch, for the respondent. WITHEY
Memorandum Opinion WITHEY, Judge: The respondent determined deficiencies in petitioners' gift tax for the years and in the amounts as follows: Docket
Defi-
No.
Year
ciency
D. Clifford Crummey
4908-64
1962
$ 760.90
1963
1,167.87
Ethel Elizabeth Crum-
mey
4909-64
1962
760.90
1963
1,167.87
The cases have been consolidated and will be decided together. The sole issue presented is whether respondent properly concluded that petitioners' gifts in trust for their minor children were gifts of future interests and therefore did not qualify for $3,000 gift tax exclusions under section 2503 of the Internal Revenue Code of 1954. All of the facts have been stipulated and are so found. Petitioners are husband and wife residing in San Francisco, California. They filed separate Federal gift tax returns for the calendar years 1962 and 1963 with the district director *139 at San Francisco, California. On February 12, 1962, petitioners executed, as grantors, an irrevocable living trust agreement for the benefit of their four children, whose names, dates of birth, and ages follow: Age on
Age on
Child
Birth Date
12/31/62
12/31/63
John Knowles Crummey
Feb. 1, 1940
22
23
Janet Sheldon Crummey
June 21, 1942
20
21
David Clarke Crummey
July 6, 1947
15
16
Mark Clifford Crummey
Feb. 20, 1951
11
12
Paragraph "ONE" of the trust required the trustee to hold the property in equal shares for the children of the grantors. Paragraph "TWO" stated that the trust agreement was to be irrevocable. Paragraph "THREE," because of its significance in the disposition of this case, is set out in full: THREE. Additions. The Trustee may receive any other real or personal property from the Trustors (or either of them) or from any other person or persons, by lifetime gift, under a Will or Trust or from any other source. Such property will be held by the Trustee subject to the terms of this Agreement. A donor may designate or allocate all of his gift to one or more Trusts, or in stated amounts to different Trusts. If the donor does *140 not specifically designate what amount of his gift is to augment each Trust, the Trustee shall divide such gift equally between the Trusts then existing, established by this Agreement. The Trustee agrees, if he accepts such additions, to hold and manage such additions in trust for the uses and in the manner set forth herein. With respect to such additions, each child of the Trustors may demand at any time (up to and including December 31 of the year in which a transfer to his or her Trust has been made) the sum of Four Thousand Dollars ($4,000.00) or the amount of the transfer from each donor, whichever is less, payable in cash immediately upon receipt by the Trustee of the demand in writing and in any event, not later than December 31 in the year in which such transfer was made. Such payment shall be made from the gift of that donor for that year. If a child is a minor at the time of such gift of that donor for that year, or fails in legal capacity for any reason, the child's guardian may make such demand on behalf of the child. The property received pursuant to the demand shall be held by the guardian for the benefit and use of the child. [Emphasis supplied.] Paragraph "FOUR" *141 authorized the trustee, in his discretion, to distribute the trust income to each beneficiary until he attained the age of 21. From age 21 to 35, the trustee was required to distribute trust income to each beneficiary, and when a beneficiary reached 35, the trustee was authorized, in his discretion, to distribute trust income to each beneficiary or his issue. In addition, the trustee was authorized to invade the trust corpus of a beneficiary's trust "up to the whole thereof" if the trustee, in his discretion, felt that the needs of a beneficiary for his "proper care, maintenance, support and education" so required. Upon the death of a beneficiary, his trust was to go to his surviving issue; if he died without issue, then it was to be added equally to the trusts of the surviving children of the grantors. When each surviving issue of an original beneficiary reached the age of 25, the trustee was to distribute to him one-third of the principal in his trust; when he reached the age of 30, one-half of the remaining principal; and when he reached the age of 35, the remaining principal. Paragraph "FIVE" required the trustee, in exercising his discretionary authority under the trust, to *142 consider any income a beneficiary received from sources outside the Trust, including the legal duty and obligation of the grantors to support their children. Paragraph "EIGHT" named Robert F. Foster, trustee. Paragraph "NINE" incorporated a spendthrift provision into the trust prohibiting the trust beneficiaries from financially encumbering either the principal or income under their respective trusts. After an initial contribution of $50, each petitioner made the following additional transfer of property to the trust: Date
Amount
June 20, 1962
$ 4,267.77
Dec. 15, 1962
49,550.00
Dec. 19, 1963
12,797.81
Total
$66,615.58 [1]
Throughout the years 1962 and 1963, the minor children of petitioners lived with their parents who fully provided for their needs. During those years no beneficiary demanded any part of his trust property nor were distributions made to any of the beneficiaries by the trustee. *143 In addition, no legal guardian was appointed for any of petitioners' minor children, either by the trust instrument or by a court of competent jurisdiction. In filing their Federal gift tax returns for 1962 and 1963, petitioners each claimed a $3,000 gift tax exclusion for each of the four trust beneficiaries, constituting total claimed exclusion by each petitioner of $24,000 for the two years in question. The Commissioner held that each petitioner was entitled to only one $3,000 exclusion for 1962 and one $3,000 exclusion for 1963 on the ground that gifts in trust to the minor beneficiaries were "future interests" and therefore disallowed by the explicit language of section 2503(b) of the Internal Revenue Code of 1954. Respondent now concedes that since Janet Sheldon Crummey became an adult in 1963, each petitioner is entitled to an additional $3,000 exclusion for 1963. The question, thus resolved, is whether petitioners are entitled to a $3,000 gift tax exclusion for gifts made to each of the minor trust beneficiaries during the taxable years 1962 and 1963. An affirmative answer to this question requires a finding that the gifts received by the minor beneficiaries *144 from the grantors, petitioners herein, were gifts of a present rather than a future interest. Although section 2503(b)[2] explicitly disallows a gift tax exclusion for gifts of a "future interest," the Code is silent on the interpretation to be given to the phrase. A "future interest" has been defined in congressional committee reports as "any interest, or estate, whether vested or contingent, limited to commence in possession or enjoyment at a future date." [3] The Commissioner's regulations have adopted a similar definition. [4] In distinguishing between present and future interests, the Supreme Court has recognized that mere vested property rights will not clothe the donee of a gift with the required "present interest" to entitle the donor to a gift tax exclusion. In Fondren v. Commissioner, 324 U.S. 18, 20-21 (1945), the Court stated the requirements of a present interest to be: the right presently to use, possess or enjoy the property. These terms are not words of art, like "fee" in the law of seizin, United States v. Pelzer, supra [312 U.S. 399], at 403, but connote the right to substantial present economic benefit. The question is of time, not when title vests, *145 but when enjoyment begins. Whatever puts the barrier of a substantial period between the will of the beneficiary or donee now to enjoy what has been given him and that enjoyment makes the gift one of a future interest * * *. *146 Recognizing the definitional problem presented, Congress, by section 2503(c) of the Internal Revenue Code of 1954, provided that gifts to minors will not be considered gifts of future interests if the income and principal can be spent by or for the minor before he attains the age of 21, or if not so spent, pass to the child when he reaches that age, or to his estate if he dies prior thereto. Since the terms of the trust in the instant case do not satisfy the requirements of section 2503(c), our decision must be based on section 2503(b). Under that section, in order that the gifts in question be held to constitute gifts of present interests, and petitioners' right to the gift tax exclusions sought to be upheld, the evidence presented must show that the minor beneficiaries during 1962 and 1963, could have effectively demanded whatever trust property they were entitled to, at least to the amount of the $3,000 exclusions petitioners sought to take for such gifts. No question is raised as to the right of the adult beneficiary, John Knowles Crummey, to make an effective demand during 1962 and 1963. His right was secure and he therefore received a present interest. *147 As to Janet Sheldon Crummey, respondent concedes that since she became an adult during 1963, the gift to her trust in that year was a present interest. Although she was only 20 during 1962, and not yet an adult under California law, [5] we hold, nevertheless, that petitioner's gift to her trust in 1962 was also of a present interest. Paragraph "THREE" of the trust provides that in the case of a minor beneficiary, his guardian "may" demand the allowable share of an annual gift made to his trust. We interpret the grantors' use of the word "may" in paragraph "THREE" as permissive rather than mandatory. Thus, if a minor beneficiary is not prohibited by state law from making his own demand, he has the right under the trust instrument to do so without the assistance of a guardian. Under California law, a minor who has attained the age of 18 has the legal capacity to "contract relating to real property, or any interest therein" as well as to make a contract "relating to any personal property not in his immediate possession of control." [6] A minor in California may also hold title to property. [7] Possessedof such broad rights under state law, and suffering from no legal disabilities brought *148 to our attention, we hold that in 1962, when Janet Sheldon Crummey was 20, she could have effectively demanded $4,000 from any and each total gift over that amount made to her trust by each petitioner, that amount thereby constituting a present interest. Such gifts thus gave rise to a permissible $3,000 gift tax exclusion for each petitioner. The more difficult question presented is whether the minor beneficiaries, David Clarke Crummey and Mark Clifford Crummey, or someone representing them, could, on or before December 31, 1962 and 1963, have effectively demanded any portion of their trust property. If not, they received gifts of future interests in those years and petitioners' claimed exclusions based on those gifts must be denied. A literal reading of the trust instrument and paragraph "THREE" in particular would compel a finding that the minor beneficiaries received present interests in 1962 and 1963 since they received vested interests in the trust property under paragraph "TWO" and they were *149 given the right to demand a determinable portion of the gift either personally or through their guardian under paragraph "THREE." In Stifel v. Commissioner, 197 F. 2d 107 (C.A. 2, 1952), affirming 17 T.C. 647 (1951), a case factually similar to the case at bar was presented. There, as here, the language in the trust instrument appeared to grant to the minor beneficiary a present interest in gifts made to his trust. In recognizing the legal disability which, in practice, prevented the minor beneficiary from effectively demanding the trust property, i.e., lack of a guardian, the Court denied the taxpayer his claimed gift tax exclusion resting its decision on circumstances outside the four corners of the trust instrument. In justifying its position, the Court adopted the following rationale: in Fondren v. Commissioner, 324 U.S. 18, 24, 65 S. Ct. 499, 89 L. Ed. 668, and Commissioner v. Disston, 325 U.S. 442, 449, 65 S. Ct. 1328, 89 L. Ed. 1720, the Supreme Court, in determining the nature of the rights conferred by the trust instruments, took account of "surrounding circumstances"; the Court, in reaching its determinations, did not *150 irrevocably lock itself inside the "four corners" of the writings but held that the key might lie outside. Were this not the rule, a donor could make gifts which on paper were 100% present but in practice were 100% future. [197 F. 2d at 110.] As we held in Arthur C. Stifel, Jr., 17 T.C. 647 (1951), affd. 197 F. 2d 107 (C.A. 2, 1952), we are not here bound by the four corners of the trust instrument, but consider also the surrounding circumstances. Under California law, both males and females are minors until they attain the age of 21. Cal. Civ. Code sec. 25. Thus, in 1962 and 1963, David and Mark Crummey, being minors, were not capable of appointing agents, Cal. Civ. Code sec. 33; were not capable of instituting suits in their own names, but only by a guardian, Cal. Civ. Code sec. 42; and any contracts which they might enter into would be voidable and could be repudiated when they reached their majority, Cal. Civ. Code sec. 35. Accordingly, we hold that David and Mark Crummey, themselves, could not have made an effective demand of their trust property during the years in question. However, since paragraph "THREE" of the trust permitted *151 "a guardian" to exercise the right to demand trust property for a minor beneficiary and since the minor beneficiaries could not themselves have made an effective demand, our inquiry must turn to a consideration of whether anyone was in existence who could have made an effective demand for them within the intendment of the trust instrument. The record discloses the appointment of no guardian for any of the minor children during 1962 and 1963. Petitioners did not appoint an agent to make demand for minor beneficiaries in the trust instrument. Petitioners contend however that the word "guardian" as used in paragraph "THREE" should be interpreted to include "natural guardian," and since the minor beneficiaries had a natural guardian [8] during the years in question, there was always someone who could have effectively demanded their trust property, thus making the gift to them one of a present interest. Whatever strength such an argument might otherwise have, we interpret California law in a manner which fails to sustain petitioner's contention. *152 Section 202 of the California Civil Code provides that: "The parent, as such, has no control over the property of a child." In distinguishing between control over a minor's person and his property, the California Legislature has thus chosen to require a guardian other than the parent of a minor to exercise control over a minor's estate. Petitioners' contention is further weakened by California decisional law which clearly indicates judicial disapproval of the selection of a parent for purposes of managing his child's estate. As the California Supreme Court stated in In re Howard's Guardianship, 24 P. 2d 482, 484 (S. Ct. of Cal. 1933): The guardian of the estate of a minor should be an entirely disinterested person. * * * This is essential in order that there may be no temptation, nor even suspicion of temptation, for him to abuse his trust. * * * A careful analysis of the provisions in the trust instrument convinces us that petitioner donors had no intention that they as parents should be considered or construed to be the guardian referred to in the trust instrument. In establishing the trust in favor of their children, petitioners carefully insulated the trust property *153 from invasion. Paragraph "THREE" provided that if the beneficiary failed, by December 31 of the year in which the gift was made, to demand that portion of the annual gift he was entitled to, his right to demand that particular gift was lost for that and all subsequent years. Under paragraph "FOUR," unless the trustee, in his absolute discretion, found that a beneficiary was "in need of funds for his or her proper care, maintenance, support, and education," the trust principal was not to be distributed until the surviving issue of an original beneficiary, i.e., petitioners' grandchildren, reached adulthood. Thus, distribution of trust principal was postponed beyond the life of petitioners' children. As a final measure of protection against dissipation of the trust assets, the trust contained a spendthrift provision which restrained the beneficiaries from encumbering or disposing of their trust estate, as well as prohibiting the trust estate from being invaded to satisfy the beneficiaries' legal obligations, including judgments. The foregoing trust provisions indicate a clear intention on the part of petitioners to restrict the use of the trust principal and thereby postpone its enjoyment *154 for the benefit of their grandchildren rather than their children. Inasmuch as the trust instrument established a plan of ultimate distribution which, under normal circumstances, was intended to avoid benefiting petitioners' children, it cannot be supposed that the grantors of that trust, or either of them, if allowed to serve as a guardian of the minor beneficiaries, would be able to impartially exercise the demand provisions of paragraph "THREE." Their attempt to do so would frustrate the very purpose of the trust they created. Thus, instead of the guardian being an "entirely disinterested person," In re Howard's Guardianship, supra, he would be an entirely "interested" person. Such a situation would be incompatible with the degree of trust required of a guardian. Petitioners attempt to bolster their contention by relying on the case of George W. Perkins, 27 T.C. 601 (1956). In the Perkins case, we held that where the right to demand trust principal and income was reposed in the beneficiary, who was a minor, his duly appointed guardian, or his parent, the gift was of a present interest although the beneficiary could not effectively exercise his right of *155 demand, due to his minority, and no guardian had been appointed Although our holding in that case necessarily accepted the proposition that the parent of a minor trust beneficiary could qualify as guardian of the minor's trust property, that decision rested on facts which are readily distinguishable from those in the instant case. There we specifically stated at page 605 that: "Respondent has cited no authority, and we know of none, that a demand by the parents could have been properly resisted." As indicated above, we interpret California statutory and decisional law as yielding a contrary result. Furthermore, in considering the right of parents to control property held in trust for their minor children, importance must be placed on the relationship which exists between the parents and the trust instrument. In Perkins, supra, since the grandfather of the minor beneficiary was grantor of the trust, the parents, as natural guardians of the minor beneficiary, were likely to exercise the minor's right of withdrawal in a manner free of any preconceived notion regarding the ultimate use of the trust property. In the instant case, as we have observed, the minors' parents were *156 themselves the grantors and, as such, had declared by the trust instrument an intention to severely limit their children's use of the trust property. Thus, any decision made by the parents, as guardians, regarding withdrawal of trust property would necessarily conflict with their intention to conserve the trust corpus for their grandchildren. It should be observed in this regard that in Perkins, the trust instrument permitted withdrawal of "any or all accumulated income and * * * principal of the trust fund," at "any time," whereas in the instant case the beneficiaries were limited (1) by the amount of trust property they could demand in any one year (the lesser of $4,000 or the actual gift to their trusts) and (2) by the fact that if they failed to demand a gift in the year made, they were foreclosed from ever demanding any part of that year's gift. As we stated in Perkins, "the circumstances surrounding the creation of the trusts and the making of the gifts are relevant factors, to be considered along with the trust instruments themselves." [9] Thus, while we recognize the possibility that in some situations a parent might be authorized spefically in the trust instrument to carry *157 out the duties incumbent upon a guardian acting for the estate of his minor child, we do not view the circumstances surrounding the creation of the trust in the instant case as such a situation.
We therefore conclude that at no time during 1962 or 1963 was there anyone who could have effectively demanded the gifts in trust, or any part of them, made to David and Mark Crummey. Although the gifts were vested, the minor beneficiaries did not have the right to their present use, possession or enjoyment. The gifts were therefore of future interests, Fondren v. Commissioner, supra, and petitioners' claimed exclusions based on those gifts must be denied. Decisions will be entered under Rule 50. Footnotes
1. Since each petitioner's gift in trust to each of his four children in 1962 was $13,454.44, and in 1963 was $3,199.45, each petitioner is entitled to a $3,000 gift tax exclusion for each gift made in those years provided the gifts were of present interests.↩
2. SEC. 2503. TAXABLE GIFTS. * * *
(b) Exclusions From Gifts. - In the case of gifts (other than gifts of future interests in property) made to any person by the donor during the calendar year 1955 and subsequent calendar years, the first $3,000 of such gifts to such person shall not, for purposes of subsection (a), be included in the total amount of gifts made during such year. Where there has been a transfer to any person of a present interest in property, the possibility that such interest may be diminished by the exercise of a power shall be disregarded in applying this subsection, if no part of such interest will at any time pass to any other person. ↩
3. H. Rept. No. 708, 72d Cong., 1st Sess., p. 29 (1932), 1939-1 C.B. (Part 2) 478; S. Rept. No. 665, 72d Cong., 1st Sess., p. 41 (1932), 1939-1 C.B. (Part 2) 526. ↩
4. Sec. 25.2503-3, Gift Tax Regs. (a) No part of the value of a gift of a future interest may be excluded in determining the total amount of gifts made during the calendar year. "Future interest" is a legal term, and includes reversions, remainders, and other interests or estates, whether vested or contingent, and whether or not supported by a particular interest or estate, which are limited to commence in use, possession or enjoyment at some future date or time. * * *↩
5. Cal. Civ. Code sec. 25↩, provides that minors are "all persons under 21 years of age." 6. Cal. Civ. Code sec. 33↩.
7. Oyama v. California, 332 U.S. 633↩ (1948).
8. A natural guardian is defined in Black's Law Dictionary (4th Ed. 1951) as "the father of a child, or the mother if the father be dead."↩
9. 27 T.C. 601, 605↩.