T.C. Memo. 2015-64

UNITED STATES TAX COURT

ISRAEL MIKEL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

ERNA MIKEL, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 16538-13, 16563-13.          Filed April 6, 2015.

<u>Stuart M. Schabes</u>, for petitioners.

<u>Michael A. Raiken</u>, for respondent.

MEMORANDUM OPINION

LAUBER, <u>Judge</u>:  Petitioners in these consolidated cases, Israel and Erna

Mikel, are husband and wife.  With respect to their Federal gift tax liabilities for

2007, the Internal Revenue Service (IRS or respondent) determined against each

**[*2]** petitioner a tax deficiency of $268,950 and a late-filing addition to tax under section 6651(a)(1) of $67,238.[1]

During 2007 each petitioner made to a family trust a gift with an asserted value of $1,631,000. In December 2011 petitioners filed separate gift tax returns reporting these gifts; each petitioner claimed under section 2503(b) an annual exclusion of $720,000. The claimed annual exclusions of $720,000 were based on the contention that each petitioner's gift included a $12,000 gift of a present interest to each of the trust's 60 beneficiaries.

In order for a donor to qualify for this annual exclusion, the donee must receive a "present interest in property," that is, an unrestricted right to the immediate use, possession, or enjoyment of property. Sec. 2503(b); sec. 25.2503-3(a) and (b), Gift Tax Regs. The IRS disallowed the claimed exclusions, determining that the beneficiaries lacked legally enforceable rights to withdraw funds from the trust and hence that petitioners had made gifts of future, not present, interests.

The parties have filed cross-motions for partial summary judgment on this question. We conclude that petitioners, during 2007, made gifts of present

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code in effect for the tax year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[*3] interests in property. We will accordingly deny respondent's motion for partial summary judgment and grant petitioners' motion for partial summary judgment to the extent discussed below.

## Background

The following facts are deemed established for purposes of ruling on the cross-motions for partial summary judgment. These facts are derived from the parties' pleadings and motion papers, including the attached affidavits and exhibits. Petitioners resided in New York when they filed their petitions.

The Family Trust

On June 7, 2007, petitioners as grantors and Salomon Mikel as trustee executed a declaration of trust (declaration) establishing the IEM Family Trust (trust), an irrevocable inter vivos trust. The trust's beneficiaries were petitioners' children and lineal descendants and their respective spouses. On June 15, 2007, petitioners jointly transferred to the trust property with an asserted value of $3,262,000. The trust at the time allegedly had 60 beneficiaries, many of whom were under 18 years of age.

Article V of the declaration, captioned "Right of Beneficiaries to Withdraw Principal," granted each beneficiary the power, during the year in which the trust was created and during any subsequent year when property was added, "to with-

[*4] draw property from the Trust including the property transferred." The amount "subject to a power of withdrawal by each beneficiary" was limited annually to the lesser of a formula-derived amount and "[t]he maximum federal gift tax exclusion under section 2503(b) * * * in effect at the time of the transfer." Declaration art. V(a). Because the formula-derived amount exceeded the maximum exclusion under section 2503(b), the latter was the operative limitation in 2007.

Within a reasonable time after the contribution of property to the trust, the trustees were required to notify all beneficiaries, and the guardians for all minor beneficiaries, that the trust had received property "as to which the beneficiary has a demand right." The demand right was required to be exercised in writing by the beneficiary or the beneficiary's guardian and generally lapsed if not exercised within 30 days of such notice. The declaration states that the trustees, upon receipt of a timely withdrawal demand, "shall immediately distribute to such bene-ficiary or Guardian the properties allocable to them, free of trust." Distributions could be made in cash or property or by "borrowing funds and distributing such funds in satisfaction of the demand." Declaration art. V(b). The declaration instructs that article V shall be construed to effect the grantors' intention that

**[*5]** "transfers to the trust * * * [qualify] for the federal gift tax annual exclusion." Id. art. V(f).

Apart from directing mandatory distributions in response to withdrawal demands, the trust empowered the trustees, "in their sole and absolute discretion," to make discretionary distributions during the term of the trust. Such distributions could be made for the health, education, maintenance, or support of any beneficiary or family member. Such distributions could also be made, in the trustees' "absolute and unreviewable discretion," to assist a beneficiary in defraying "reasonable wedding costs, * * * purchasing a primary residence, or * * * entering a trade or profession." In exercising this discretion the trustees were empowered to distribute "at any time and from time to time, any amount of income or principal (even to the extent of all)." The declaration specifies that "[t]he judgment of the Trustees as to the amounts of such payments and the advisability thereof shall be final and conclusive" upon all beneficiaries and other persons interested in the trust. Declaration art. VI(b)(3).

If any dispute arises concerning the proper interpretation of the declaration, article XXVI provides that the dispute "shall be submitted to arbitration before a panel consisting of three persons of the Orthodox Jewish faith." Such a panel in Hebrew is called a beth din. This panel is directed, in the event of any dispute, to

**[*6]** "enforce the provisions of this Declaration * * * and give any party the rights he is entitled to under New York law." Article XXVI states that the declaration as a whole shall be construed "to effectuate the intent of the parties * * * that they have performed all the necessary requirements for this Declaration to be valid under Jewish law."

Article XXVI contains an in terrorem provision designed to discourage beneficiaries from challenging discretionary acts of the trustees. It provides:

> In the event a beneficiary of the Trust shall directly or indirectly institute, conduct or in any manner whatever take part in or aid in any proceeding to oppose the distribution of the Trust Estate, or files any action in a court of law, or challenges any distribution set forth in this Trust in any court, arbitration panel or any other manner, then in such event the provision herein made for such beneficiary shall thereupon be revoked and such beneficiary shall be excluded from any participation in the Trust Estate * * *.

On October 9, 2007, an attorney acting for the trust mailed to each beneficiary, in his or her capacity as such and as the guardian of any minor children, a written notice captioned "Notice of Right of Withdrawal." Each letter informed its respective recipient that a contribution had been made to the trust and that "you and each of your children under the age of 18 years as beneficiaries of the Trust have a right to withdraw property or funds up to $24,000.00 each from the Trust." This letter advised that withdrawal rights had to be exercised within 30 days from

**[*7]** its receipt. The record does not indicate whether any beneficiary has ever exercised withdrawal rights, whether the trustees have ever made discretionary distributions, or whether a dispute has ever arisen concerning either. There is no evidence of any prearranged plan or understanding among petitioners and the beneficiaries that would prevent the latter from exercising their withdrawal rights.

Federal Tax Matters

Neither petitioner timely filed Form 709, United States Gift (and Generation-Skipping Transfer) Tax Return, for 2007. On December 15, 2011, after being contacted by the IRS, each petitioner submitted a separate Form 709 reporting gifts to the trust during 2007 of assets valued at $1,631,000. These assets consisted of petitioners' residence in Brooklyn, New York, two other properties in Brooklyn (held directly or through a limited liability company), and a condominium in Florida. The reported values, totaling $3,262,000, were based on appraisals enclosed with the returns or (in the case of their residence) on the market value reflected "on the 2007/08 New York City Real Property Tax Assessment Rolls." The Forms 709 included consents by each petitioner that the gifts were to be "considered as made one-half by each of [us]." Petitioners claimed annual exclusions of $720,000 on the theory that both had made separate gifts of $12,000 to each of

**[\*8]** the trust's 60 beneficiaries.  After application of unified credits, the Forms 709 reported no gift tax due.

Following examination of these returns, the IRS sent petitioners separate notices of deficiency determining that they were ineligible for the claimed annual exclusions and determining additions to tax for late filing.  Petitioners timely petitioned this Court, and their cases were consolidated for trial or other disposition. The parties have filed cross-motions for partial summary judgment asking the Court to decide whether petitioners are eligible to claim annual exclusions under section 2503(b).

## Discussion

A.    Summary Judgment Standard

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials.  Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988).  Under Rule 121(b) the Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law.  Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994).  The parties agree on all questions of material fact and have expressed that consensus by filing cross-motions for partial

**[*9]** summary judgment.  We find that the question presented is appropriate for summary adjudication.[2]

B.      Annual Exclusions From Gift Tax

Section 2501(a)(1) imposes a tax "on the transfer of property by gift" during any calendar year.  Section 2511(a) provides that "the tax imposed by section 2501 shall apply whether the transfer is in trust or otherwise."  The parties agree that petitioners' gifts to the trust in 2007 were completed gifts within the meaning of these provisions.

Section 2503(b)(1) provides an exclusion from taxable gifts.  It provides that, "[i]n the case of gifts (other than gifts of future interests in property) made to any person by the donor during the calendar year, the first $10,000 of such gifts to such person shall not * * * be included in the total amount of gifts made during such year."  Section 2503(b)(2) adjusts this annual exclusion for inflation; for gifts

---

[2]Respondent contends that there may be facts in dispute concerning the number of annual exclusions to which petitioners would be entitled, asserting that they "have not provided any documentation * * * to establish the number of the beneficiaries of the Trust at the time the gifts were made."  Petitioners have supplied uncontested affidavits from Salomon Mikel as trustee and from the trust's attorney attesting that the trust had 60 beneficiaries on June 15, 2007, to each of whom notice of withdrawal rights was given on October 17, 2007.  In any event, the exact number of beneficiaries is not material to this opinion.  Respondent also asserts that there may be facts in dispute as to "the value of the gifts."  The IRS on audit did not question the value of the gifts; if there is a genuine dispute as to valuation, it is not material to this opinion.

**[\*10]** made during 2007, the exclusion was $12,000 per donee. Rev. Proc. 2006-53, sec. 3.32, 2006-2 C.B. 996, 1006.

The annual exclusion is available only for gifts of a "present interest in property." Sec. 2503(b)(1). A "present interest in property" is defined as "[a]n unrestricted right to the immediate use, possession, or enjoyment of property or the income from property." Sec. 25.2503-3(b), Gift Tax Regs. "No part of the value of a gift of a future interest may be excluded" from taxable gifts. Id. para. (a).

On its face the declaration gave each trust beneficiary an unrestricted right to withdraw, during 2007, an amount equal to "[t]he maximum federal gift tax exclusion under section 2503(b) of the Code in effect at the time of [the] transfer." Because petitioners elected to split their gifts, each beneficiary was thus empowered to withdraw $24,000. Each beneficiary received (directly or through his or her parent) timely and effective notice of the right to withdraw this sum. The declaration states unequivocally that, upon receipt of a timely withdrawal demand, "the Trustees shall immediately distribute to such beneficiary or guardian the properties allocable to them, free of trust."

Respondent concedes that the declaration affords each beneficiary an unconditional right of withdrawal and suggests no colorable basis on which the trus-

**[\*11]** tees could properly refuse to honor a timely withdrawal demand.[3]

Respondent nevertheless contends that the beneficiaries did not receive a "present interest in property" because their rights of withdrawal were not "legally enforceable" in practical terms. According to respondent, a right of withdrawal is "legally enforceable" only if the beneficiary can "go before a state court to enforce that right." This is something that respondent believes a beneficiary of the trust would be very reluctant to do.

Respondent starts by hypothesizing that the trustees might refuse, without legal basis, to honor a timely withdrawal demand. In that event, article XXVI of the declaration would require the beneficiary to submit the dispute to a beth din. If the beth din, again without legal basis, sustained the trustees' refusal to honor the demand, respondent agrees that the beneficiary could seek redress in a New York court despite the State's general reluctance to disturb arbitral

---

[3]Article VI(b)(3) of the declaration states that the trustees may "withhold principal and/or income from any beneficiary." This is an adjunct of the trustees' "absolute and unreviewable discretion" to make discretionary distributions under article VI; it does not limit or qualify the beneficiaries' unconditional right to withdraw property under article V. Article V(g) provides that the trustees may exclude beneficiaries from having withdrawal rights "with respect to any addition to the Trust." This refers to "additional property" transferred to the trust in years after it is established. See Declaration art. V(a). Respondent agrees that this clause covers "additional contributions" and did not empower the trustees to refuse a timely withdrawal demand with respect to property initially contributed to the trust during 2007.

[*12] decisions.[4]  But a beneficiary would be extremely reluctant to go to court, respondent insists, because he would thereupon forfeit all his rights under the trust by virtue of article XXVI's in terrorem clause.  Practically speaking, therefore, respondent contends that the beneficiaries' withdrawal rights are "illusory" and do not constitute a "present interest in property."

A little background may help in evaluating respondent's chain of reasoning.  The trust at issue here is a "demand trust," often called a "Crummey trust" because of the favorable treatment accorded such a trust by the Court of Appeals for the Ninth Circuit in Crummey v. Commissioner, 397 F.2d 82 (9th Cir. 1968), rev'g in part T.C. Memo. 1966-144.  The court there "approved an ingenious device to obtain an [annual gift tax] exclusion for a discretionary accumulation trust by giving beneficiaries the right to demand immediate distribution of particular amounts."  Boris I. Bittker & Lawrence Lokken, Federal Taxation of Income, Estates, and Gifts, para. 124.3.3, at 124-13 (2d ed. 1993).

The demand clause in Crummey, substantially similar to that here, provided that whenever an addition was made to the trust, a beneficiary or guardian acting

---

[4]According to respondent, beneficiaries of a trust will not be deemed by a New York court to have consented to an arbitration provision, and a New York court will not enforce an arbitral award against a nonconsenting party.  Given respondent's concession on this point, we need not address the correctness of these State law propositions.

**[*13]** for a minor beneficiary could demand immediate withdrawal of an amount keyed to the maximum annual exclusion under section 2503(b). The court held this demand right to be a "present interest in property" even though no guardian for the minor beneficiaries had been appointed. Under the test it adopted, "all that is necessary is to find that the demand could not be resisted," which the court understood to mean "legally resisted." Crummey v. Commissioner, 397 F.2d at 88. That being so, the court concluded that the trustee would have no choice "but to have a guardian appointed to take the property demanded" on the minor's behalf. Ibid. The court rejected the IRS' submission that "a lawsuit or the appointment of an agent is a necessary prelude to the making of a demand upon the trustee." Id. at 87. "The only time when the [minor's] disability to sue would come into play," the court noted, "would be if the trustee disregarded the demand and committed a breach of trust. That would not, however, vitiate the demand." Ibid.

In 1973 the IRS expressed its general agreement with the Crummey line of analysis. See Rev. Rul. 73-405, 1973-2 C.B. 321, revoking Rev. Rul. 54-91, 1954-1 C.B. 207. The IRS there concluded that "if there is no impediment under the trust or local law to the appointment of a guardian and the minor donee has a right to demand distribution, the transfer is a gift of a present interest that qualifies

**[\*14]** for the annual exclusion." <u>Ibid.</u> The IRS confirmed this conclusion in Rev. Rul. 85-24, 1985-1 C.B. 329, 330, stating: "When a trust instrument gives a beneficiary the power to demand immediate possession [and enjoyment] of corpus [or income], the beneficiary has received a present interest." <u>Accord</u> Rev. Rul. 81-7, 1981-1 C.B. 474.

We adopted the Court of Appeals for the Ninth Circuit's reasoning and result in <u>Estate of Cristofani v. Commissioner</u>, 97 T.C. 74 (1991), a unanimous reviewed Opinion of this Court. The proper focus of analysis, we explained, is not "the likelihood that the minor beneficiaries would actually receive present enjoyment of the property," but "the legal right of the minor beneficiaries to demand payment from the trustee." <u>Id.</u> at 80. We therefore examined "the ability of the beneficiaries, in a legal sense, to exercise their right to withdraw trust corpus, and the trustee's right to legally resist a beneficiary's demand for payment." <u>Id.</u> at 83. Considering the terms of the trust agreement, we concluded that "each grandchild possessed the legal right to withdraw trust corpus and that the trustees would be unable to legally resist a grandchild's withdrawal demand." <u>Ibid.</u> We accordingly held that the minor beneficiaries' withdrawal rights constituted "a present interest for purposes of section 2503(b)." <u>Id.</u> at 84.

[*15] In 1992 the IRS published an action on decision (AOD) acquiescing in the result of Estate of Cristofani. AOD 1992-9 (Apr. 6, 1992), 1992 WL 794826. In 1996 it published a second AOD explaining its position. AOD 1996-10 (July 15, 1996), 1996 WL 390089. It there stated that the IRS "does not contest annual gift tax exclusions for Crummey powers where the trust instrument gives the power holders a bona fide unrestricted legal right to demand immediate possession and enjoyment of trust income or corpus." Id., 1996 WL 390089, at *1. However, it stated that the IRS "will deny the exclusions for Crummey powers * * * where the withdrawal rights are not in substance what they purport to be in form." Ibid. Annual exclusions would be challenged, the IRS stated, if "there was a prearranged understanding that the withdrawal right would not be exercised" or that "doing so would result in adverse consequences to its holder (e.g., losing other rights or gifts under the instant trust instrument or other beneficial arrangement)." Ibid. In such circumstances, the IRS would contend that "the creation of the withdrawal right is not a bona fide gift of a present interest in property."[5] Ibid.

---

[5]As the Court of Appeals for the Ninth Circuit noted in Crummey, 397 F.2d at 87, and as we noted in Estate of Cristofani, 97 T.C. at 80-81, the Court of Appeals for the Second Circuit in 1952 articulated a somewhat different approach for determining whether a withdrawal right constitutes a "present interest." See Stifel v. Commissioner, 197 F.2d 107 (2d Cir. 1952) (holding that a court should determine whether a minor beneficiary is likely to receive present enjoyment of trust

(continued...)

[*16] Respondent does not dispute that all trust beneficiaries (including minor

beneficiaries) had during 2007, and received timely notice of, an unconditional

right to withdraw property from the trust. As in Estate of Cristofani, 97 T.C. at 83,

and in Crummey, 397 F.2d at 88, there is no suggestion that the trustees here could

"legally resist a * * * [beneficiary's] withdrawal demand." Nor does respondent

contend that there existed any "prearranged understanding" that withdrawal rights

would not be exercised. See Estate of Kohlsaat v. Commissioner, T.C. Memo.

1997-212, 73 T.C.M. (CCH) 2732, 2734 (finding no such "understanding" in that

case). Rather, respondent contends that the withdrawal right was "illusory"

---

⁵(...continued)
property by examining the trust instrument, the State law as to minors, and the
financial and other circumstances of the parties), aff'g 17 T.C. 647 (1951). This
Court "follow[s] a Court of Appeals decision which is squarely in point where
appeal from our decision lies to that Court of Appeals and to that court alone."
Golsen v. Commissioner, 54 T.C. 742, 757 (1970), aff'd, 445 F.2d 985 (10th Cir.
1971). Petitioners lived in New York when they filed their petitions, and absent
stipulation to the contrary, an appeal would lie to the Court of Appeals for the
Second Circuit. See sec. 7482(b)(1)(A). The IRS did not cite Stifel in Estate of
Cristofani, 97 T.C. at 81, and it did not cite Stifel in briefing the instant case. Our
research indicates that no court has cited Stifel since we decided Estate of
Cristofani in 1991. Because the IRS has issued several revenue rulings accepting
the Crummey approach, and because respondent has not cited Stifel here, we deem
respondent to have conceded that he would not adopt the approach of the Court of
Appeals in Stifel or that, if he did adopt it, it would not lead to a result different
from the approach outlined in the text.

**[\*17]** because any attempt to seek legal enforcement of that right "would result in adverse consequences to its holder." AOD 1996-10, 1996 WL 390089, at \*1.

We discern two flaws in respondent's argument. First, if we adopt his premise that a withdrawal right must not only be "legally irresistible" under the trust instrument, but also be "legally enforceable" in an extrinsic sense, it is not obvious why the beneficiary must be able to "go before a state court to enforce that right." Here, if the trustees were to breach their fiduciary duties by refusing a timely withdrawal demand, the beneficiary could seek justice from a <u>beth din</u>, which is directed to "enforce the provisions of this Declaration \* \* \* and give any party the rights he is entitled to under New York law." A beneficiary would suffer no adverse consequences from submitting his claim to a <u>beth din</u>, and respondent has not explained why this is not enforcement enough.

Second, if we assume arguendo that our hypothetically-frustrated beneficiary must have an enforcement remedy in State court, respondent concedes that the beneficiaries of the trust have such a remedy. Respondent's argument is not that judicial enforcement is unavailable, but that this remedy is "illusory" because the in terrorem provision would deter beneficiaries from pursuing it. We think respondent has misapprehended this provision's meaning.

[*18] Article XXVI of the declaration provides that a beneficiary shall forfeit his rights under the trust if he "directly or indirectly institute[s] * * * any proceeding to oppose the distribution of the Trust Estate, or files any action in a court of law, or challenges any distribution set forth in this Trust in any court, arbitration panel or any other manner." While not a paragon of draftsmanship, this provision is evidently designed to discourage legal challenges to decisions by the trustees to make discretionary distributions of trust property, e.g., to help beneficiary A finish college, help beneficiary B enter a business, or enable beneficiary C to have a nice wedding. Article VI(b)(3) gives the trustees "absolute and unreviewable discretion" in such matters and states that their judgment "as to the amounts of such payments and the advisability thereof shall be final and conclusive."

The evident purpose of the in terrorem provision is to backstop article VI by discouraging legal actions seeking to challenge the trustees' "absolute and unreviewable discretion" concerning discretionary distributions from the trust. The first and third clauses of the in terrorem provision explicitly track this purpose, providing that a beneficiary will forfeit his rights if he institutes a proceeding "to oppose the distribution of the Trust Estate" or "challenges any distribution * * * in any court." A beneficiary who filed suit to compel the trustees to honor a timely withdrawal demand would not be "opposing or challenging" any distribution

**[*19]** (discretionary or otherwise) from the trust. Because the beneficiary's action would not be covered by the in terrorem provision, that provision logically would not dissuade him from seeking judicial enforcement of his rights.

In urging a broader construction of the in terrorem provision, respondent focuses on its second clause, "or files any action in a court of law." But this clause cannot be read literally; otherwise, it would bar beneficiaries from participating in the trust if they filed suit to recover for mischievous behavior by their neighbor's dog. The second clause must be given a limiting construction.[6] We think the most sensible limiting construction is to interpret this clause in pari materia with the two clauses that surround it. The second clause thus bars a beneficiary from enjoying benefits under the trust if he files suit in any court to oppose or challenge a decision by the trustees to distribute trust property to another beneficiary. This interpretation gives the in terrorem provision a coherent meaning that is consistent with the provisions of article VI affording the trustees "absolute and unreviewable discretion" concerning such matters.[7]

---

[6]See In re Estate of Walsh (Tipping), 975 N.Y.S.2d 370, 2013 WL 3388644, at *2 (N.Y. Sur. 2013) ("While in terrorem clauses are enforceable, they are not favored and must be strictly construed." (quoting Matter of Singer, 13 N.Y.3d 447, 451 (2009))).

[7]The canon of construction "noscitur a sociis"--a Latin phrase meaning "it is

(continued...)

**[*20]** In sum, we conclude that the beneficiaries of the trust possessed a "present interest in property" because they had, during 2007, an unconditional right to withdraw property from the trust and their withdrawal demands could not be "legally resisted" by the trustees. Crummey, 397 F.2d at 88; Estate of Cristofani, 97 T.C. at 84. Assuming arguendo that the beneficiaries' withdrawal rights must be enforceable in State court, we conclude that this remedy, which

---

[7](...continued)
known by its associates"--supports the construction set forth in the text. This canon of construction "hold[s] that the meaning of an unclear word or phrase should be determined by the words immediately surrounding it." Black's Law Dictionary 1160-1161 (9th ed. 2009). While this canon does not set forth an inescapable rule, it is often wisely applied to avoid giving unintended breadth to a terms that are susceptible to multiple meanings. See James v. United States, 550 U.S. 192, 222 (2007) (A word should be interpreted "in a manner that makes it 'fit' with the words with which it is closely associated."); Wallace v. Commissioner, 128 T.C. 132, 141 (2007) ("[T]he meaning of an unclear word or phrase should be determined by the words immediately surrounding it."). For example, in Jarecki v. G.D. Searle & Co., 367 U.S. 303, 307 (1961), the Supreme Court interpreted the word "discovery" as used in section 456(a)(2)(B) of the Internal Revenue Code of 1939, which imposed tax on "income resulting from exploration, discovery, or prospecting." Whereas "discovery" is a broad term that in other contexts can include geographical and scientific discoveries, the Court held that its association with "exploration" and "prospecting" suggested that the term, as used in this statute, had the narrower meaning of "discovery of mineral resources." Id. at 307. Here, the clause "files any action in a court of law" is susceptible to a broad range of meanings. Applying the "noscitur a sociis" canon, we can surmise that the drafters of the declaration intended to give it scope comparable to that of the clauses surrounding it. Although this interpretation renders the second clause surplusage to some degree, there is a great deal of surplusage in article XXVI anyway, and we do not regard this as a strong counterweight here.

**[*21]** respondent concedes was literally available, was also practically available because the in terrorem provision, properly construed, would not deter beneficiaries from pursuing judicial relief.  We will accordingly grant petitioners' motion for summary judgment to the extent consistent with this opinion and deny respondent's motion for partial summary judgment.

<u>An appropriate order will be issued</u>.